Elda J. GOETZ, Appellant,

v.

FARM CREDIT SERVICES, Appellee.

No. 90–1568.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1990.

Decided March 5, 1991.

Carolyn P. Bayer, Kansas City, Mo., for appellant.

Mark G. Flaherty, Kansas City, Mo., for appellee.

Before JOHN R. GIBSON, Circuit Judge, HENLEY, Senior Circuit Judge, and CONMY,[*] Chief District Judge.

CONMY, Chief District Judge.

Appellant Elda J. Goetz appeals from the district court[1] order granting summary judgment in favor of the appellee, Farm Credit Services of Northwest Missouri (FCS), on Goetz' employment discrimination claims. We affirm.

## BACKGROUND

Appellant was employed as a secretary at the Warrensburg, Missouri, branch office of FCS from December 1, 1980, until February 28, 1987, when the Warrensburg branch closed and she was discharged. It is not disputed that the closing of the Warrensburg branch was the result of a legitimate reduction-in-force caused by economic necessities. Before the close of the War-

---

[*] The HONORABLE PATRICK A. CONMY, United States Chief District Judge for the District of North Dakota.

[1] The Honorable D. Brook Bartlett, United States District Judge for the District of Western Missouri.

rensburg office, Appellant applied for an unfilled secretarial position that existed in the FCS's branch in Higginsville, Missouri. Linda Hurd, a secretary in the Warrensburg office, also applied for the Higginsville position and was selected over Appellant. Appellant was forty-nine years old when she applied for the Higginsville position; Ms. Hurd was thirty-five.

Appellant initiated an action in Federal district court against FCS pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (1981), alleging she was terminated because of her age. FCS moved for summary judgment, conceding for purposes of its motion only that Appellant had made a prima facie case of disparate treatment. However, FCS contended that her termination was not based upon a consideration of her age, but on other, nondiscriminatory factors. The reasons articulated by FCS for choosing Ms. Hurd over Appellant were (1) "That Hurd's most recent evaluation rated her as 'exceeds expectations;' while [Appellant's] most recent evaluation rated her as 'meets expectations;'" and (2) "Hurd had prior banking, loan service and computer experience while [Appellant] did not."

The district court granted summary judgment for FCS, determining that Appellant had failed to offer sufficient evidence from which a rational trier of fact could infer that FCS's articulated nondiscriminatory reasons for selecting Ms. Hurd over Appellant were pretextual. Thus, the sole issue on appeal is whether the evidence submitted to the district court by Appellant was sufficient to create in the mind of a reasonable factfinder a belief that the reasons given by FCS for retaining Ms. Hurd over Appellant were in fact pretextual for discriminatory intent.

In reviewing an order granting summary judgment, we apply the same standard that governs the district court: summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Pierce v. Marsh*, 859 F.2d 601, 603 (8th Cir.1988). The party opposing the motion is entitled to all reasonable inferences to be drawn from the facts and all facts are to be viewed in the light most favorable to that party. *Id.* at 603.

I.

■ Appellant initially asserts that the district court erroneously required her to present *direct* evidence from which a fact finder could infer that FCS's reasons for the discharge were pretextual.

We do not accept that this was the requirement under which the Appellant was operating at the district court level. A close reading of the district court's order granting FCS's motion for summary judgment indicates the decision was based upon the fact that, in the district judges's opinion, Appellant had failed to produce any "specific" evidence capable of creating a genuine issue of material fact regarding whether the reasons given by FCS for Appellant's discharge were pretextual. One cannot equate the terms "specific evidence" and "direct evidence."

■ This court acknowledges that discrimination is difficult to prove by direct evidence. *Haglof v. Northwest Rehabilitation, Inc.*, 910 F.2d 492, 493 (8th Cir.1990). This is why a plaintiff at the prima facie stage in the typical case is allowed to benefit from an inference of discrimination simply upon proof that the plaintiff was in the protected age category, that he or she was performing adequately on the job, and that he or she was terminated and replaced by a younger person with no better credentials. *Id.* at 493. The burden then shifts to the employer to come forward with a nondiscriminatory reason for the person's dismissal. *Id.* at 494. After the employer does so, the plaintiff has the burden to demonstrate that the proffered reason was not the true reason for the employment decision. *Id.* The aggrieved party may succeed in this either directly, by persuading the court that a discriminatory reason more likely motivated the employer; or indirectly, by showing that the employer's proffered explanation is unworthy of credence. *Id.* Indirect proof that an employer's reasons for its decision are pretextual is sufficient because "[a]s a matter of both com-

mon sense and federal law, an employer's submission of a discredited explanation for firing a member of a protected class is itself evidence that may persuade the finder of fact that such unlawful discrimination actually occurred." (quoting *MacDissi v. Valmont Indus., Inc.*, 856 F.2d 1054, 1059 (8th Cir.1988)). *Id.*

Having reassured Appellant that indirect evidence is sufficient to create an issue of fact regarding FCS's alleged pretext, we now turn to a de novo review of the record upon which the district court based its summary judgment ruling.

## II.

Appellant argues FCS's claimed reliance on the computer skills of the two women in determining whom to discharge is pretextual. Appellant contends this assertion is supported by the fact that (1) prior to Appellant's discharge, the Higginsville office had not yet been computerized; (2) after Appellant's discharge, extensive computer training was given to the Higginsville clerical staff; and (3) Daryl Oldvader, the person responsible for making the decision to discharge Appellant, in fact made no attempt to ascertain the respective computer skills of either woman.

There is no dispute that FCS planned to computerize its Higginsville office. Thus, the decision to retain an employee with computer skills over another without was based on the anticipated needs of FCS. Appellant argues the computers initially installed in the Higginsville office were intended for use "primarily" by loan officers. However, Appellant admits the secretaries did incorporate these computers into their daily work. Appellant asserts that none of the secretaries had prior experience with computers and in fact needed extensive training in their use. Thus, Appellant argues that "[a]t the time it discharged [Appellant], FCS did not require computer skills of its secretaries, but instead relied on self-teaching programs to train them."

■ We find the fact that other secretaries employed by FCS were without computer skills is irrelevant to FCS's decision to choose to retain an employee with com-

puter skills over one without. Obviously, when many of FCS's secretaries were originally hired, Appellant included, prior computer experience was not required. Testimony in the record indicates this is no longer true. Anticipating that computer skills would shortly be required at its Higginsville office and faced with a decision concerning whether to retain an employee with computer skills or one without, FCS determined it was better business to retain the employee possessing computer experience.

■ Appellant also argues pretext can be inferred from the fact that after Appellant was discharged, all of the Higginsville employees received computer training. We find this contention also irrelevant in light of the fact that the decision to retain Ms. Hurd was based on the computer training the respective women possessed at the time the decision was made. The decision was apparently not based on who may have been more trainable; although, FCS may have believed that a person with some prior computer experience would also have been more receptive to further training. Appellant argues she was never offered any computer training. The record indicates none of the clerical staff at the Higginsville office was trained until the computers were installed; the installation occurring after Appellant's discharge.

■ Appellant's third argument regarding whether FCS based its decision to terminate Appellant on her lack of computer skills has more merit. Appellant contends FCS failed to make a good faith effort to ascertain the respective computer skills each woman possessed. Put simply, Appellant states FCS never asked her, immediately prior to her termination, about whether she had gained experience with computers since being hired.

FCS contends knowledge of Ms. Hurd's computer skills was based on an interview conducted in January of 1986, her job application, and her 1986 employee performance evaluation. FCS contends knowledge of Appellant's lack of computer skills was based on her employment application (over

six years old) and on her annual performance evaluations.

Appellant argues the specific skills FCS claims to have looked for were not revealed by the job applications, the interviews, or the evaluations. She also argues it was not fair to rely on the performance evaluations because the possession of computer skills is not germane to these evaluations. Thus, Appellant asserts FCS should have interviewed both women immediately prior to its decision concerning whom to retain to determine the level of prior computer experience each possessed. Since FCS failed to do so, Appellant contends a decision to terminate her based upon a perceived lack of computer skills could not have been made in good faith.

Mr. Oldvader, the president/general manager of FCS and the person responsible for Appellant's termination, stated the decision to terminate Appellant was based on a determination that Ms. Hurd possessed computer skills Appellant did not. He stated this determination was based on their job applications, interviews conducted at the time of hiring, and on the subsequent performance evaluations. Appellant does not dispute that the job applications, the interviews at the time of hiring and the performance evaluations indicate Ms. Hurd possessed computer experience Appellant did not. Appellant contends pretext is shown by the fact that Mr. Oldvader testified at his deposition that he looked for four specific computer skills: computer literacy, software usage, reporting and customer files; but that the job applications, interviews and evaluations did not disclose these specific skills.

We find, as the district court apparently found, that this argument is an attempt to manufacture pretext from the flimsiest of foundations. "Computer literacy" and "software usage" are not specific computer skills, but are generalities used to describe a person's prior exposure to computers. Anyone with prior computer experience would possess a degree of computer literacy and would also have used some type of software. "Reporting" and "customer files" present a closer question, but we seriously doubt that one would claim to be adept at "reporting" on a computer, or would state that, "Yes, I am skilled at 'customer files' vis a vis a computer." More likely, FCS's questions would concern the type of software with which the prospective employee had some experience. After a review of Mr. Oldvader's deposition in which he discussed these particular "skills," it is our opinion that an ability to do "reporting," or to work with customer files on a computer would depend upon the specific software involved. Thus, the only way these terms would carry any relevance would be if Ms. Hurd had used the particular software—or something similar—FCS intended to install in its Higginsville office. There is no evidence Ms. Hurd had these specific capabilities. Our reading of the deposition testimony indicates the discussion concerned the generic term "computer literacy," and that some of the specific tasks the person operating the software would be required to perform would concern reporting and customer files. FCS simply determined Ms. Hurd was more computer literate that the Appellant.

Appellant further contends the performance evaluations could not properly be used in determining the relative computer skills of the women, because computer skills were not germane to these evaluations.

The performance evaluations used by FCS consist primarily of eight different categories subject to rating according to the following scale: U—Unacceptable; B—Below Requirements; M—Meets Requirements; E—Exceeds Requirements; and O—Outstanding. The eight categories are: (1) Job Knowledge; (2) Job Results; (3) Dependability; (4) Initiative; (5) Adaptability; (6) Attitude; (7) Relationships; and (8) Punctuality and Attendance. The eight categories are further broken down into subcategories, subject to the same rating scale. For example, the first category, Job Knowledge, has three subcategories: (1) "Breadth and depth of knowledge;" (2) "Understands work procedures and methods;" and (3) "Understands equipment and machines." Most categories have three of four subcategories. A twelfth category is not subject to the rating scale, but is re-

served for the evaluator's comments concerning the employee's "Training & Development." The comments with respect to the twelfth category on Ms. Hurd's 1986 evaluation state that "[s]he has had some computer experience with her former job which should help her whenever we get on line with our own computer system." Appellant's 1986 evaluation contains no remarks concerning her computer experience, or lack thereof. Apparently, none of Appellant's prior evaluations contain any reference to computer skills either.

We find computer skills were germane to the employee performance evaluations FCS conducted. This finding is supported by the fact that Ms. Hurd's evaluation contained a reference to her prior computer experience and that it was considered important enough to be commented upon by the evaluator. In evaluating an employee's training and development, the evaluator is asked to "[i]dentify what specific training and development the employee may need, if any, to maintain or improve, or correct an area that may affect current performance." In analyzing a thirteenth category, "Potential Ability", the evaluator is asked to "[d]escribe this employee's potential for assuming greater responsibility: 1.) Specific position to which the individual may be promoted; 2.) Qualifications for positions in other fields; or, 3.) General potential, etc." We find that, considering the importance of computers in society today and FCS's anticipated implementation of a computer system, the computer skills possessed by its employees would be an area an evaluator would be concerned about and would likely be reflected either under category twelve or thirteen.

Appellant also argues that FCS should have conducted interviews with the two women immediately prior to the decision of whom to terminate to determine the extent of their current computer skills.

We find FCS's failure to conduct further interviews was not unwarranted under the circumstances. FCS relied on its job applications, performance evaluations, and pre-employment interviews. Since interviews are rarely if ever recorded, it is reasonable to assume the heaviest reliance was placed upon the job applications and the performance evaluations. Both of these fail to indicate Appellant possessed computer experience of any kind. FCS's reliance resulted in a determination that Ms. Hurd possessed computer skills Appellant did not. The record indicates Ms. Hurd did possess computer skills Appellant did not. We find that even though FCS may in retrospect have done things better[2], its reliance on the employees' job applications and performance evaluations was not unreasonable.

## III.

In addition to Ms. Hurd's superior computer skills, FCS claims to have relied on the 1986 performance evaluations of the two women in determining whom to retain. Considering the eight categories contained in the evaluations (described above) overall, Ms. Hurd was rated as "exceeds requirements" while Appellant's evaluation rated her as merely having met the requirements. Ms. Hurd met requirements in four categories and exceeded requirements in four categories. Appellant met requirements in seven categories and exceeded requirements in one category. However, a review of the subcategories reveals that Appellant was rated below requirements three of twenty-eight times while Ms. Hurd received a below requirements rating only once. Ms. Hurd's below requirements rating concerned the breadth and depth of her knowledge. We find this relatively insignificant considering she had been on the job only eight months. The below requirements ratings received by Appellant also concerned her knowledge of her job, in addition to job accuracy and thoroughness. We find this much more significant considering the fact she had been on the job six years. It is not unreasonable for an em-

**2.** Some companies facing a reduction in force situation initiate some kind of plan in which objective criteria are used to determine which jobs will be eliminated and the effect of layoffs on protected groups. *See e.g., Nolting v. Yellow Freight Sys., Inc.,* 799 F.2d 1192 (8th Cir.1986), and *EEOC v. Sandia Corp.,* 639 F.2d 600 (10th Cir.1980).

ployer to expect an employee to gain some mastery over the tasks within a certain job in a six-year period.

Appellant contends the performance evaluations were not a valid means of assessing the relative merits of the two women because the 1986 evaluations were based on "differing expectations." Appellant points out that she had worked for FCS for six years while Ms. Hurd had worked for FCS for only eight months. Appellant contends FCS's expectations for her had to take into account the fact that because of her tenure, she was assuming responsibilities beyond her position, while Ms. Hurd's evaluation revealed she needed "further training" and that she had not yet been exposed to all aspects of FCS's procedures.

We are unsure how the term "expectations" became interjected into Appellant's analysis. Apparently, it is in reference to Mr. Oldvader's October 2, 1989, affidavit. Our review of the performance evaluations indicates employees are rated according to "requirements" not expectations. However, even assuming the terms contained within the rating scale are less than objective, the evaluations are still revealing in that they indicate Appellant was performing at a substandard level. She was rated as below requirements under what we consider critical subcategories—those involving the knowledge and accuracy of her work. Based on the evaluations alone, FCS could have reasonably decided to retain Ms. Hurd in favor of Appellant. Thus, we find Appellant has failed to demonstrate pretext with respect to FCS's reliance on the employee evaluations.

### IV.

Appellant further contends that FCS has proffered a variety of inconsistent and contradictory reasons for her discharge. FCS produced four job descriptions of branch secretary in response to Appellant's discovery requests. Appellant asserts Daryl Oldvader stated during his deposition that these job descriptions were one of three factors he considered in making the decision, but that he later stated he did not actually consult the job descriptions produced during discovery in deciding to discharge Appellant.

We agree with FCS that the alleged inconsistency was actually caused by Appellant's counsel's mischaracterization of Mr. Oldvader's prior testimony. When first asked what factors were considered in deciding to offer the job to Ms. Hurd, Mr. Oldvader stated: "We looked at the job *description* (singular), qualifications, we looked at past performance evaluations." (Emphasis added). Appellant's counsel then inquired at length about various documents labeled "job descriptions" and asked: "When you referred to the job description, you meant one of these job descriptions?" Mr. Oldvader responded: "We looked in terms of the requirements that we knew would be relevant to that job." Appellant's counsel continued to ask about the specific job description documents and FCS's counsel objected to her misrepresentation of Mr. Oldvader's testimony regarding his consideration of the job description. Appellant's counsel then asked: "What did you mean when you said that you considered job *descriptions* (plural)." (Emphasis added). Mr. Oldvader responded: "Well, basically whether we are looking at a credit support function or a loan officer function." Appellant's counsel then asked if he could be more specific and Mr. Oldvader responded: "If you are looking as far as the office assistants or the position we are talking about, we looked at the basic elements of what it would take to complete that position." Whereupon FCS's counsel asked: "And did you actually consult either [exhibit] eight or nine?" [the job description documents], and Mr. Oldvader responded: "No, not as a line item description per se."

A review of Mr. Oldvader's deposition clearly indicates he never testified that he relied specifically on the documents entitled "job descriptions," but rather, used the term "job description" generically, to mean the duties of the position. The inconsistency, if any, was caused by Appellant's counsel's mischaracterization of Mr. Oldvader's testimony, not by his actual testimony.

Appellant also claims Mr. Oldvader was inconsistent or contradictory in describing the qualifications he relied on in making the decision to terminate her. During his deposition he stated the only qualifications he looked at in making the decision were computer skills. However, Appellant asserts that in every other formal explanation of the reasons for which she was discharged, FCS has stated it relied on Ms. Hurd's prior banking experience as well.

We find Appellant is trying to create an impression of pretext based upon an isolated incident; a single statement made during the taking of a lengthy, and sometimes confusing, deposition. Appellant admits that in every formal statement of the reasons given for her discharge, FCS has said one of the factors it relied on was Ms. Hurd's prior banking experience. We therefore find as a matter of law that the record as a whole fails to support Appellant's contention concerning FCS's alleged inconsistencies.

Appellant also contends FCS has been inconsistent in stating who actually made the decision to discharge her and to retain Ms. Hurd. By affidavit, Mr. Oldvader stated he made the decision to award the Higginsville position to Linda Hurd. Appellant, however, states that during his deposition, Mr. Oldvader testified that he "would have been privy" to the discussions in which FCS decided to discharge the Appellant. Appellant is apparently asserting this statement indicates Mr. Oldvader was later equivocating about his role in the decision.

We find Appellant is once again attempting to create an impression of pretext where none exists. Mr. Oldvader's deposition testimony clearly states that he was involved in *every* decision to eliminate a position and that his concurrence was necessary. It is true that Mr. Oldvader did involve other managers in determining whom to discharge. Mr. Oldvader, however, had the final responsibility for the decision. We therefore find his deposition testimony does not contradict his affidavit.

V.

■ Appellant's final argument is that she "has presented statistical evidence from which a jury could infer that she was a victim of intentional discrimination." Appellant states that when FCS downsized its operations it discharged nine secretaries. Appellant asserts FCS discharged six of the ten secretaries over the age of forty, but only three of the twelve secretaries under the age of forty. She also states that, overall, FCS discharged five of the six oldest secretaries.

FCS counters with its own statistics. FCS states that in the reorganization that affected Appellant, eighteen employees positions were eliminated. Nine of those positions were held by persons under forty years of age and nine of those positions were held by persons over forty years of age. In December 1985, when the FCS reorganizations began, nine employees elected to retire or to accept other employment. Seventy-five employees, with an average age of thirty-six years, remained with the organization. After the completion of the staff reductions and reorganizations, by April 1987, forty-eight employees remained in the FCS system, again with an average age of thirty-six years. The average age of the clerical staff from which the final employee complement was drawn (after retirements and resignations) was forty years. In April 1987, after all reductions in force were completed, the average age of the organization's clerical staff remained forty years. Thus, FCS argues the statistics actually support FCS's position and certainly are not indicative of any discrimination.

■ We agree that statistical evidence has some probative value in determining whether the decision to terminate an employee was based on the employee's age. However, the statistical evidence must be of a kind and degree sufficient to raise the inference that the employment decision was based upon an impermissible factor such as age. *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 108 S.Ct. 2777, 2788–89, 101 L.Ed.2d 827 (1988). Statistical disparities must be sufficiently substan-

tial that they raise such an inference. *Id.* at 2789. *See also Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269, 1276 (8th Cir.1990) ("bare boned" statistical data was insufficient to allow an inference of discrimination). Considering the record as a whole, we simply are not in a position to infer from Appellant's proffered statistical evidence that the decision concerning who to retain was based on a consideration of the women's age.

We conclude, as a matter of law, that Appellant has failed to present a genuine issue of material fact concerning whether the reasons proffered by FCS for retaining Ms. Hurd in favor of the Appellant were pretextual for age discrimination. Accordingly, the district court's order granting summary judgment is AFFIRMED.