**William F. GLOVER, Plaintiff–Appellee,**

**v.**

**McDONNELL DOUGLAS CORP.,
Defendant–Appellant.**

**No. 92–1059.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 17, 1992.

Decided Dec. 16, 1992.

Rehearing and Rehearing En Banc
Denied Feb. 15, 1993.

Thomas C. Walsh, St. Louis, MO, argued (Michael P. Burke and Cornelius L. McGrath, on the brief), for defendant-appellant.

Michael J. Hoare, St. Louis, MO, argued, for plaintiff-appellee.

Before BEAM, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

McDonnell Douglas Corporation ("McDonnell Douglas") appeals the jury's verdict in favor of William Glover on his claim under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–34 (1988) and its awards of emotional distress, liquidated, and punitive damages. We affirm in part, reverse in part, and remand.

## I. BACKGROUND

### A. *The Layoff*

In the middle of 1987, McDonnell Douglas responded to declining business by consolidating its Astronautics, Electronics, and Microelectronics subsidiaries. The company determined that, as a result of the consolidation, approximately 120 jobs would have to be eliminated. Most of these jobs were eliminated when McDonnell Douglas instituted a voluntary severance program, but the program fell short of its goal, resulting in the need to lay off nineteen individuals.

Joseph Barbeau, the person in charge of the newly consolidated accounting department, was told that he had to select three people to be laid off. In February 1988 Barbeau selected the three employees, including Glover. Glover was fifty-nine years old and had worked for the Astronautics subsidiary for over twenty years. Glover had a BA degree and an associates degree but did not have a degree in accounting. His job was that of a "processor" in the Accounts Payable Section; his duties consisted primarily of reviewing invoices to insure they complied with the company's purchase orders. Glover sued McDonnell Douglas, alleging he had been selected for termination based on his age and was denied consideration for reassignment to another subsidiary based on his age.

### B. *The Trial*

In outlining the evidence presented at trial, we find it more expedient to discuss McDonnell Douglas' evidence first. Barbeau testified that he began working for the Astronautics division in the summer of 1987. In the middle of January, 1988, Barbeau was told that three people would have to be laid off, but he was not told how to go about selecting those three people. He was permitted to chose any three employees, whether they were salaried or hourly, full-time or part-time. In making his determination, he relied on the company's "totem poles." The totem poles listed employees, with the better performers and most valuable employees being listed closer to the top. Totem poles were generated annually by each subsidiary and used as, among other things, a factor in awarding merit raise. In determining who was to be laid off, Barbeau obtained the totem poles for each newly consolidated subsidiary from 1985, 1986, and 1987. During these three years, all three subsidiaries utilized separate poles for salaried and non-salaried employees. On the Astronautics' subsidiary's totem pole for 1987, Glover ranked 42 out of 42 salaried employees; in 1986, he was ranked 39 out of 43; and in 1985, he ranked 30 out of 52. Barbeau testified that if salaried and hourly employees were combined on one totem pole, Glover would have ranked 57 out of 61 in 1987. From the totem poles, Barbeau created a list of employees that had consistently ranked near the bottom in the preceding three years. He then began acquiring other information about the employees by talking to other supervisors. Barbeau wrote some (but not all) of this information down; included in this information was the statement that one of the employees on his list was "young" and had "more potential." After conversing with the other supervisors, Barbeau created a preliminary list of approximately fifteen candidates for layoff and ranked the top six; Glover was ranked as the second candidate.

Barbeau then consolidated much of his previously collected information and added information reflecting each employee's age, years of service, and absentee record. On approximately January 18, he discussed the information with his staff, whereupon it was decided that Glover should be among those laid off. Barbeau prepared yet another, more detailed copy of his information and had two further discussions with representatives from McDonnell Douglas' legal and human relations departments. At these meetings, Barbeau was told that if all things were equal between two or more likely candidates, years of service could be considered (with greater seniority being rewarded). He was also given some basic information about the ADEA.

Glover testified that he inquired about moving to McDonnell Douglas' Aircraft subsidiary, and to that end spoke with Jim Cleeton. Glover testified that Cleeton told him he would not be considered because of his age. Cleeton testified and denied making this statement. Glover also testified about his experiences in finding another job, and that the combination of being laid off and the menial nature of his new job caused him to experience disruptive sleep habits, a diminished desire for food, and a degree of humiliation sufficient to prevent him from socializing as much as he had before being laid off.

Also testifying on Glover's behalf were four other employees in accounts payable. All four were significantly younger than Glover, were hourly employees, and had less education and experience. One of these employees had received particularly critical job appraisals, and another ranked below Glover on the combined totem pole; no information was provided about the other employees' job performance or their positions on any totem poles. None of these employees was laid off in February of 1988. Because these processors were hourly employees, they did not appear on the same totem poles as Glover, who was a salaried employee. We will discuss more of the evidence presented at trial during our discussion of the issues.

The jury returned a verdict in Glover's favor and awarded him $30,000 in backpay, $100,000 in emotional distress damages, and $100,000 in punitive damages. The jury found the violation to be willful, and the district court accordingly awarded Glover an additional $30,000 in liquidated damages. The court also granted Glover equitable relief in the form of reinstatement and pension credit. McDonnell Douglas appeals.

## II. DISCUSSION

### A. *Standard of Review*

■ Our standard of review is well established. When reviewing a district court's denial of a motion for judgment notwithstanding the verdict, we must

1) consider the evidence in the light most favorable to [Glover], who prevailed with the jury; 2) assume that all conflicts in the evidence were resolved by the jury in [Glover's] favor; 3) assume as proved all facts which [Glover's] evidence tends to prove; 4) give [Glover] the benefit of all favorable inferences which may reasonably be drawn from the facts proved; and 5) affirm the denial of the motion if reasonable persons could differ as to the conclusions to be drawn from it.

*Gilkerson v. Toastmaster, Inc.,* 770 F.2d 133, 136 (8th Cir.1985). McDonnell Douglas, however, relies on a footnote in *Dace v. ACF Indus., Inc.,* 722 F.2d 374 (8th Cir. 1984) to argue that a standard of review less favorable to Glover should be used. In the relevant footnote, we theorized that "[i]f, for example, the moving party's evidence is completely disinterested, uncontradicted, and unimpeached, ... some modification of the general rule may be called for." *Id.* at 377 n. 6. We went on to explain that if the witness had an interest in the result of the lawsuit, the credibility of that witness was a matter best determined by a jury. *Id.*

*Dace* does not justify altering the standard of review in this case. First, all of McDonnell Douglas' testimony came from its employees, all of whom have an interest (even if not pecuniary) in this case. Therefore, we cannot fairly characterize their

testimony as "completely disinterested." Second, the only evidence that can fairly be described as unimpeached and uncontradicted was the fact that McDonnell Douglas was experiencing a decline in business, which necessitated the need to eliminate some employees. Even if *Dace* were to apply, it does not require all evidence—even that which was contradicted and impeached—to be viewed in McDonnell Douglas' favor. Because the evidence regarding Glover's claims is not the type described in *Dace*, we will apply the traditional standard of review.

### B. *Sufficiency of the Evidence*

■ This case proceeded to trial, and the jury found that McDonnell Douglas discriminated against Glover because of his age. Consequently, we need only examine the record and determine whether there was sufficient evidence to support the jury's finding that McDonnell Douglas intentionally discriminated against Glover; we do not concern ourselves with determining whether the various burdens of proof that must be met at the preliminary stages were satisfied by the parties. *E.g., Hall v. American Bakeries Co.*, 873 F.2d 1133, 1135 (8th Cir.1989). Given the standard of review governing this issue, *see* part II.A, *supra*, we conclude there was sufficient evidence to support the jury's verdict, although concededly this presents a close case.

When viewed in the light most favorable to Glover, the jury was justified in finding that, though business conditions were such that McDonnell Douglas was justified in laying off some of its employees, Glover was selected to be one of those laid off because of his age. Barbeau was not given any criteria to determine who should be laid off until after he had made his preliminary determinations, and even then the guidelines with which he was provided were rather sketchy. Barbeau asserted that Glover was selected because of his low ranking on the totem pole, but Glover presented evidence that younger employees who ranked lower (or as low) on the totem pole were not considered for termination even though they could have been laid off

in Glover's place. This indicates that Barbeau did not apply his self-imposed standards when he selected Glover. The jury could also question the content and value of the information supplied by the other supervisors because they testified that they had little or no personal experience with Glover, and most of them testified they either had no opinion about Glover or they could not recall what their opinion was. One supervisor testified that he recorded the candidates' ages, but did not know why he did so. Similarly, Barbeau wrote down the candidates' ages; he indicated he did so because the information would be needed when the ultimate decision was reviewed. However, there is no indication as to how this information was actually used in any review and, given that Barbeau was given no directions on how to select the three people to be laid off, it is not clear how he knew this information would be needed. Finally, Glover testified that Cleeton told him he would not be considered for a job because of his age. If believed by the jury, these comments were sufficient to allow the jury to conclude that McDonnell Douglas was more interested in employing young employees than old employees, and was certainly sufficient to sustain the jury's determination that Glover was not rehired because of his age.

McDonnell Douglas' arguments fall into three main categories. The first category consists of a variety of arguments explaining why the evidence is insufficient. We will neither list nor discuss each of them individually; instead, we will simply note that it is the jury's function to consider the competing evidence, as well as the competing views of that evidence. In rendering its verdict, the jury afforded greater credit to Glover's view of the facts, and we cannot change the outcome simply because McDonnell Douglas is able to present a different view of the facts. *See Morgan v. Arkansas Gazette*, 897 F.2d 945, 951–52 (8th Cir.1990).

■ ´ The second argument focuses on the fact that McDonnell Douglas was instituting a reduction in force that was necessitated by legitimate business concerns.

While this is true, the fact that Glover was terminated as part of a reduction in force does not automatically bar his claim of age discrimination. The reduction in force meant that somebody would be laid off, but the decision as to who was to be laid off could not be made on the basis of age. *See Hillebrand v. M–Tron Indus., Inc.,* 827 F.2d 363, 367 (8th Cir.1987), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989) (quoting *Christie v. Foremost Ins. Co.,* 785 F.2d 584, 587 (7th Cir.1986)). McDonnell Douglas contends Glover failed to make the additional showing of age discrimination required in reduction in force cases. *See Holley v. Sanyo Mfg., Inc.,* 771 F.2d 1161, 1166 (8th Cir.1985). We disagree; keeping in mind that direct evidence is not necessary, *id.,* we note that Cleeton's statements combined with the circumstances indicating Barbeau was not completely faithful to his own criteria serves as the necessary additional showing. More importantly, however, is the fact the additional showing requirement is part of the prima facie case, *id.* at 1165; as we have already noted, this case went to trial before a factfinder, and on appeal we do not focus on whether the prima facie case was made. *See Hall,* 873 F.2d at 1135.

■ McDonnell Douglas' final argument concerns the use of Barbeau's and Hudson's recording of the employees' ages. McDonnell Douglas contends we have previously held that such acts are not evidence of age discrimination. A close examination of the cases upon which the appellant relies demonstrates we have not enunciated such a general proposition. In *Smith v. Goodyear Tire & Rubber Co.,* 895 F.2d 467 (8th Cir.1990), the plaintiff's supervisor had included the plaintiff's age in an evaluation devoted primarily to another employee. *Id.* at 472. We stated that *"[o]n the facts of this case,* we believe this single reference to age is insufficient evidence of Goodyear's intent to discriminate." *Id.* (emphasis added). By its own terms, the statement does not purport to set forth a general rule of law. In *Goetz v. Farm Credit Servs.,* 927 F.2d 398 (8th Cir.1991), we noted that "[s]ome companies facing a reduction in force situation initiate some kind of

plan in which objective criteria are used to determine ... the effect of layoffs on protected groups." *Id.* at 403 n. 2. This does not insulate every instance in which an employer takes special note of its employees' ages. While an employer could note its employees' ages for the legitimate purpose identified in *Goetz,* an employer could also note its employees' ages for the illegitimate purpose of facilitating discrimination on the basis of age. Whether the purpose for the notation is legitimate or not is for the jury to decide; in this case, we note that Hudson had no reason for writing down the employees' ages, and there was no indication the information was used by anybody to conduct the analysis described in *Goetz.* Thus, the jury was justified in inferring the ages were not used for legitimate reasons.

In conclusion, we reiterate our belief that this is an extremely close case. McDonnell Douglas presented evidence that Glover was not among the company's best performers. On the other hand, Glover presented evidence (particularly, testimony relating to his attempt to secure a job elsewhere in the company) indicating age-based animus existed. Sharply contrasting testimony was presented to the jury, and the jury chose to believe Glover; there is nothing in the record that demonstrates, as a matter of law, this decision was improper or unfounded. The jury simply found Glover to be more credible, and we cannot disturb this determination on appeal.

## C. Jury Instructions

■ The district court instructed the jury that it should find for Glover if it found

First, that plaintiff has proved that his age was, more likely than not, a motivating factor in defendant's decisions as to discharge and/or re-employment; and second, that defendant has failed to prove that plaintiff would have been discharged and/or not re-employed regardless of his age. In showing that plaintiff's age was a motivating factor, plaintiff is not required to prove that his age was the sole motivation or the primary

motivation for defendant's decision as to discharge and/or re-employment.

This instruction is based on the Supreme Court's plurality opinion in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). *Price Waterhouse* applies to mixed-motive cases; that is, "cases in which the employer had both legitimate and illegitimate reasons for its actions." *Gray v. University of Ark. at Fayetteville,* 883 F.2d 1394, 1398 (8th Cir. 1989). If direct evidence of age discrimination has been presented, the *Price Waterhouse*-based instruction may properly be given. *Beshears v. Asbill,* 930 F.2d 1348, 1353 (8th Cir.1991). Once the plaintiff presents evidence that age was a motivating factor in the employer's decision, the employer " 'may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the [illegitimate criterion] into account.' " *Id.* (quoting *Price Waterhouse,* 490 U.S. at 258, 109 S.Ct. at 1794). McDonnell Douglas contends the "mixed motive" instruction should not have been given and, even if it was proper in this case, it is improperly worded. We reject both contentions.

As a general rule, we would expect that all successfully prosecuted age discrimination cases involving a reduction in force would involve mixed motives because the plaintiff would be alleging the employer had both a legitimate reason (the economic need to reduce the workforce) and an illegitimate reason (to terminate an employee based on his or her age). As we have already noted, a plaintiff terminated as a result of a reduction in force must present additional evidence to demonstrate an impermissible factor was used to select him or her for termination; more likely than not, this extra showing will qualify as direct evidence sufficient to trigger the *Price Waterhouse* analysis.

We prove this point by using this case as an example. For purposes of triggering the *Price Waterhouse* analysis, direct evidence may consist of "actions or remarks of the employer that reflect a discriminatory attitude," *Beshears,* 930 F.2d at 1354 (quoting *Gray,* 883 F.2d at 1398), or com-

ments made by individuals that are closely connected to the decisionmaking process. *Id.* As discussed earlier, Barbeau's and Hudson's recording of the candidates' ages could be interpreted as an action designed to facilitate discrimination on the basis of age. Furthermore, Cleeton's statements demonstrate the reduction in force was designed, in part, to eliminate older employees and certainly demonstrates the decision not to reassign Glover was motivated by discriminatory purposes. Thus, direct evidence was offered, and the use of the *Price Waterhouse* analysis was not improper.

■ McDonnell Douglas next argues that even if the *Price Waterhouse*-based instruction was appropriate, it was improperly worded in that it permitted Glover to prevail if he proved that his age was a "motivating factor," instead of a "substantial factor," in McDonnell Douglas' decision to lay him off. Despite McDonnell Douglas' contentions, we do not believe *Price Waterhouse* mandates one wording or the other. It is true that the *Price Waterhouse* plurality expressed the standard in terms of a "motivating" factor, *e.g.,* 490 U.S. at 258, 109 S.Ct. at 1794, whereas the concurring opinions used the term "substantial." *E.g., id.* at 259, 109 S.Ct. at 1795 (White, J., concurring); *id.* at 265, 109 S.Ct. at 1798 (O'Connor, J., concurring). Nonetheless, the differences in the views expressed in the plurality, the two concurrences, and the dissent do not center on which word should be used; rather, the Justices differed as to whether a new analytical framework was needed for mixed-motive cases. *See id.* at 246–47, 109 S.Ct. at 1788 (plurality opinion); *id.* at 287, 109 S.Ct. at 1810 (Kennedy, J., dissenting). Indeed, the dissent recognized that "[d]iscrimination need not be the sole cause in order for liability to arise, but merely a necessary element of the set of factors that caused the decision, *i.e.,* a but-for cause." *Id.* at 284, 109 S.Ct. at 1808 (Kennedy, J., dissenting).

Furthermore, the distinction McDonnell Douglas urges escapes us. Within the context of determining the cause of an employ-

er's decision, the two phrases have been equated, *e.g., Mount Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). Common sense tells us that if a factor motivates a certain decision, that factor is substantial; conversely, a factor cannot be considered to be substantial unless it motivates (at least in part, which is the entire premise upon which *Price Waterhouse* lies) the ultimate decision. We find no error in the giving or the wording of the mixed-motive instruction.

### D. *Emotional Distress*

McDonnell Douglas contends Glover failed to present sufficient evidence, as required by Missouri law, to sustain the jury's award of $100,000 for emotional distress. We agree and therefore vacate the award.[1]

 The federal age discrimination laws do not allow for recovery of damages for emotional distress. *E.g., Fiedler v. Indianhead Truck Line, Inc.,* 670 F.2d 806, 809–10 (8th Cir.1982). Any claim for emotional distress damages must, therefore, arise from state law. Glover relies on the Missouri Human Rights Act, Mo.Rev.Stat. § 213.111.2 (1986), which authorizes a court to award actual damages to a prevailing plaintiff. There is not much dispute that Missouri courts view damages arising from emotional distress as actual damages; the dispute is over how Missouri courts require those damages to be proved. In *Bass v. Nooney Co.,* 646 S.W.2d 765, 772–73 (Mo. 1983) (en banc), the Missouri Supreme Court rejected the "impact rule" and held that a plaintiff could recover damages for emotional distress if "the emotional distress or mental injury [is] medically diagnosable and ... of sufficient severity so as to be medically significant. Former decisions holding to the contrary are no longer to be followed." *Id.* at 772–73 (footnote omitted). Subsequent decisions have interpreted *Bass* to require expert medical testimony when no physical injury is involved.

*E.g., Skyles v. Burge,* 830 S.W.2d 497, 500 (Mo.Ct.App.1992); *Childs v. Williams,* 825 S.W.2d 4, 10 (Mo.Ct.App.1992); *Van Eaton v. Thon,* 764 S.W.2d 674, 676 (Mo.Ct.App. 1988). Glover failed to present expert medical testimony to support his claim of emotional distress, and therefore the $100,000 award for these damages must be vacated.

Glover contends *Bass* applies only when emotional distress is an element of the cause of action, such as when the plaintiff alleges either intentional or negligent infliction of emotional distress. He points out that *Bass* involved a claim for negligent infliction of emotional distress and contends *Bass* does not apply when emotional damages simply comprise a part of the damage element of a cause of action. However, nothing in *Bass* contains such a limitation, and it does not appear that Missouri courts have read *Bass* in such a limited way. *E.g., State ex rel. Benz v. Blackwell,* 716 S.W.2d 270, 272–273 (Mo.Ct.App. 1986) (applying *Bass* to cause of action for false return of summons). It thus appears that Missouri courts require expert medical testimony to support a claim of emotional distress whenever physical injuries are not incurred, regardless of whether emotional distress constitutes a substantive element of the cause of action or an element of damages for any other type of action.

### E. *Willfulness*

 The ADEA allows for double damages when the employer's violation is willful. *Lee v. Rapid City Area School Dist. No. 51-4,* 981 F.2d 316, 332 (8th Cir. 1992) (en banc). A violation is willful if the employer either knew his actions violated the ADEA or if the employer recklessly disregarded the possibility that his actions violated the ADEA. *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 128–29, 105 S.Ct. 613, 625, 83 L.Ed.2d 523 (1985). Because this award of liquidated damages is punitive in nature, *id.* at 125, 105 S.Ct. at 623, it must be supported by

---

**1.** Because of our holding on this issue, we need not address McDonnell Douglas' alternative argument that Missouri law would require this claim be initially submitted to the Missouri Labor and Industrial Relations Commission.

evidence beyond the minimum necessary to prove the violation. *Rademaker v. Nebraska,* 906 F.2d 1309, 1313 (8th Cir.1990); *Bethea v. Levi Strauss & Co.,* 827 F.2d 355, 359 (8th Cir.1987). The plaintiff cannot meet his burden by proving the employer knew his actions would implicate the ADEA, *Thurston,* 469 U.S. at 127–28, 105 S.Ct. at 624–25, nor will the fact the plaintiff presented direct evidence of discrimination automatically meet this standard. *Williams v. Valentec Kisco, Inc.,* 964 F.2d 723, 729 (8th Cir.1992), *cert. denied,* ── U.S. ──, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992).

■ In this case, Glover did (barely) present sufficient evidence to sustain the jury's verdict; however, the evidence does not go beyond establishing a violation of the ADEA. There is simply no evidence that McDonnell Douglas recklessly disregarded the possibility of an ADEA violation, and there is no contention that the company knew its actions were discriminatory. Consequently, there was no evidence upon which the jury's finding of willfulness can rest, so we reverse the jury's finding and vacate the corresponding award.[2]

### F. *Punitive Damages*

■ The jury awarded Glover punitive damages based on its finding that McDonnell Douglas violated the Missouri Human Rights Act. We have previously recognized that the standard for awarding punitive damages under this law requires the employer's conduct to have been " 'outra-geous because of [the employer's] evil motive or reckless indifference to the rights of others.' " *Finley v. Empiregas, Inc. of Potosi,* 975 F.2d 467, 472 (8th Cir.1992) (quoting *Burnett v. Griffith,* 769 S.W.2d 780, 789 (Mo.1989) (en banc)). Although we construe the evidence in the light most favorable to Glover, *id.,* we find no evidence of evil motive or reckless indifference on McDonnell Douglas' part. Glover argues the award should be upheld because discrimination must be deterred; however, this logic would require that all violations result in punitive damage awards, and this does not correspond with Missouri law. As with the award of double damages under the federal law, the state law requires a showing beyond the minimum necessary to establish the violation. The requisite evidence is not present in this case, and the evidence that is present is not sufficient to sustain the jury's award. Accordingly, we vacate the award of punitive damages.

### G. *Pension Credit*

■ McDonnell Douglas contends the district court's order granting Glover pension credit from the time of his termination amounts to a double award for Glover. Since his termination, Glover has received pension payments totalling almost $35,000. In ordering that Glover be reinstated, the district court ordered McDonnell Douglas to "make whatever compensatory payments are necessary to enable plaintiff, upon his retirement, to receive benefits as

---

**2.** We note the existence of two pending cases that bear on this issue, and take this opportunity to explain why we do not wait for the outcome in those cases. The first of these cases is *Brown v. Stites Concrete Co.,* which is to be heard by this court en banc. 969 F.2d 714 (1992). The now-vacated panel opinion in that case makes clear that the issue involved was centered on the jury instructions on the willfulness claim—it does not appear that sufficiency of the evidence was an issue. Because we have held that the evidence in this case was insufficient, we do not believe the en banc court's decision regarding the jury instructions in *Brown* will have any impact on this case.

The second case is *Hazen Paper Co. v. Biggins,* ── U.S. ──, 112 S.Ct. 2990, 120 L.Ed.2d 868, a case in which the Supreme Court has granted certiorari. (June 23, 1992). The question presented will require the Court to decide whether,

"[i]n view of its consequence of imposing automatic punitive damages in every discriminatory treatment case in which [an] underlying violation of [the ADEA] is found," *Thurston* should continue to apply to individual (as opposed to class-based) claims under the ADEA. *Id.* We believe the Court will do one of two things (and we make no prediction as to which): either continue to apply *Thurston* to individual plaintiffs or impose a higher standard of willfulness for individual plaintiffs; we do not believe the Court will lower the standard already enunciated in *Thurston.* Regardless of the course of action the Court chooses, our decision today will be unaffected; if *Thurston* continues to apply, the law—and our decision—will be unchanged. If a higher standard is imposed, the evidence in this case will be insufficient to meet it, inasmuch as Glover has not even met the *Thurston* standard.

though he had been employed by the defendant continuously since his initial date of hire in 1967 and without any interruption in service related to his unlawful discharge in February 1988." *Glover v. McDonnell Douglas Corp.*, No. 90–0034C(3), slip op. at 7 (E.D.Mo. July 15, 1991) (order granting equitable relief). McDonnell Douglas contends that if Glover is to be "made whole" through reinstatement and the granting of back pay and full pension credit (thereby putting him in the position as if he had never been unlawfully terminated), the total award should be offset by the pension benefits he has received because he would not have received them but for the termination. In other words, the district court's order puts Glover in a better than whole position; he gets back pay, pension benefits as if he had not been terminated, and the pension benefits he has already received.

Glover contends the district court acted properly because it did not know how the pension plan was funded. Consequently, the district court was faced with a choice of erring in favor of the innocent plaintiff or the company, and chose to risk error in favor of the plaintiff. We do not agree with this characterization. The details of the pension's funding are irrelevant to this issue; regardless of how the plan is funded, the court's order will put Glover in a better position than if he had not been terminated because he will be entitled to full pension payments *plus* the pension payments he has already received. The district court's order thus goes beyond simply making Glover whole, and on remand the district court is instructed to modify its grant of equitable relief to address this over-compensation.

## III. CONCLUSION

We affirm the jury's finding of age discrimination and award of backpay. We reverse the jury's finding of willfulness and vacate the corresponding awards, as

well as the awards for punitive and emotional damages. Finally, we remand to the district court so that it may modify its grant of equitable relief consistent with part II.G of this opinion.