William F. GLOVER, Plaintiff–Appellee,

v.

McDONNELL DOUGLAS CORP., Defendant–Appellant.

No. 92–1059.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 10, 1993.

Decided Jan. 7, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Feb. 18, 1994.

Tom Walsh, St. Louis, MO, argued (Michael P. Burke and Cornelius L. McGrath, on the brief), for defendant-appellant.

Michael J. Hoare, St. Louis, MO, argued (John D. Lynn, on the brief), for plaintiff-appellee.

Before BEAM, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

On October 4, 1993, the United States Supreme Court vacated our previous decision in this case (reported at 981 F.2d 388 (1992)) and remanded for reconsideration in light of *Hazen Paper Co. v. Biggins*, —— U.S. ——, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). On reconsideration, we affirm in part and reverse in part.

## I. BACKGROUND

Rather than reformulate the facts of this case, we set forth below the background substantially as it was explicated in our prior opinion.

### A. The Layoff

In the middle of 1987, McDonnell Douglas responded to declining business by consolidating its Astronautics, Electronics, and Microelectronics subsidiaries. The company determined that, as a result of the consolidation, approximately 120 jobs would have to be eliminated. Most of these jobs were eliminated when McDonnell Douglas instituted a voluntary severance program, but the pro-

gram fell short of its goal, resulting in the need to lay off nineteen individuals.

Joseph Barbeau, the person in charge of the newly consolidated accounting department, was told that he had to select three people to be laid off. In February 1988 Barbeau selected the three employees, including Glover. Glover was fifty-nine years old and had worked for the Astronautics subsidiary for over twenty years. Glover had a BA degree and an associates degree but did not have a degree in accounting. His job was that of a "processor" in the Accounts Payable Section; his duties consisted primarily of reviewing invoices to insure they complied with the company's purchase orders. Glover sued McDonnell Douglas, alleging he had been selected for termination based on his age and was denied consideration for reassignment to another subsidiary based on his age.

## B. The Trial

In outlining the evidence presented at trial, we find it more expedient to discuss McDonnell Douglas' evidence first. Barbeau testified that he began working for the Astronautics division in the summer of 1987. In the middle of January, 1988, Barbeau was told that three people would have to be laid off, but he was not told how to go about selecting those three people. He was permitted to choose any three employees, whether they were salaried or hourly, full-time or part-time. In making his determination, he relied on the company's "totem poles." The totem poles ranked employees, with the better performers and most valuable employees being listed closer to the top. Totem poles were generated annually by each subsidiary and used as, among other things, a factor in awarding merit raise. In determining who was to be laid off, Barbeau obtained the totem poles for each newly consolidated subsidiary from 1985, 1986, and 1987. During these three years, all three subsidiaries utilized separate poles for salaried and non-salaried employees. On the Astronautics' subsidiary's totem pole for 1987, Glover ranked 42 out of 42 salaried employees; in 1986, he was ranked 39 out of 43; and in 1985, he ranked 30 out of 52. Barbeau testi-

fied that if salaried and hourly employees were combined on one totem pole, Glover would have ranked 57 out of 61 in 1987. From the totem poles, Barbeau created a list of employees that had consistently ranked near the bottom in the preceding three years. He then began acquiring other information about the employees by talking to other supervisors. Barbeau wrote some (but not all) of this information down; included in this information was the statement that one of the employees on his list was "young" and had "more potential." After conversing with the other supervisors, Barbeau created a preliminary list of approximately fifteen candidates for layoff and ranked the top six; Glover was ranked as the second candidate.

Barbeau then consolidated much of his previously collected information and added information reflecting each employee's age, years of service, and absentee record. On approximately January 18, he discussed the information with his staff, whereupon it was decided that Glover should be among those laid off. Barbeau prepared yet another, more detailed copy of his information and had two further discussions with representatives from McDonnell Douglas' legal and human relations departments. At these meetings, Barbeau was told that if all things were equal between two or more likely candidates, years of service could be considered (with greater seniority being rewarded). He was also given some basic information about the ADEA.

Glover testified that he inquired about moving to McDonnell Douglas' Aircraft subsidiary, and to that end spoke with Jim Cleeton. Glover testified that Cleeton told him he would not be considered because of his age. Cleeton testified and denied making that statement. Glover also testified about his experiences in finding another job, and that the combination of being laid off and the menial nature of his new job caused him to experience disruptive sleep habits, a diminished desire for food, and a degree of humiliation sufficient to prevent him from socializing as much as he had before being laid off. Also testifying on Glover's behalf were four other employees in accounts payable. All four were significantly younger than Glover,

were hourly employees, and had less education and experience. One of these employees had received particularly critical job appraisals, and another ranked below Glover on the combined totem pole; no information was provided about the other employees' job performance or their positions on any totem poles. None of these employees was laid off in February of 1988. Because these processors were hourly employees, they did not appear on the same totem poles as Glover, who was a salaried employee.

The jury returned a verdict in Glover's favor and awarded him $30,000 in backpay, $100,000 in emotional distress damages, and $100,000 in punitive damages. The jury found the violation to be willful, and the district court accordingly awarded Glover an additional $30,000 in liquidated damages. The court also granted Glover equitable relief in the form of reinstatement and pension credit. McDonnell Douglas appeals.

## II. DISCUSSION

### A.

In its appeal, McDonnell Douglas raised issues relating to the proper standard of review on appeal (Part A of our prior opinion), the sufficiency of the evidence (Part B), the correctness of certain jury instructions (Part C), the award of emotional damages under state law (Part D), the finding of a willful violation (Part E), the award of punitive damages under state law (Part F), and the granting of pension credit (Part G). Though the Supreme Court's order vacated our prior opinion as it related to all these issues, it remanded for reconsideration in light of Hazen Paper. This case is relevant to the case at bar only for its discussion of the standard to be used in determining whether a violation is willful. Though we are free to revisit all the issues in this case, we

do not think it necessary to do so at any great length.[1]

■ With regard to the other issues, our decisions are the same as they were earlier. Specifically, we hold that the traditional standard of review should apply, and that though "[s]harply contrasting testimony was presented to the jury, ... the jury chose to believe Glover [and] there is nothing in the record that demonstrates, as a matter of law, this decision was improper or unfounded." Glover, 981 F.2d at 393. We also hold that the jury instruction was properly based on the Price Waterhouse[2] formulation for mixed-motive cases. We reverse the award of emotional distress damages awarded under Missouri law because there was no expert medical testimony offered to support Glover's claim as required by Missouri law. We reverse the punitive damage award under state law because there was "no evidence of evil motive or reckless indifference on McDonnell Douglas' part" as required by Missouri law. Glover, 981 F.2d at 396. Finally we vacate the award of pension credit because "the district court's order puts Glover in a better than whole position; he gets back pay, pension benefits as if he had not been terminated, and the pension benefits he has already received." Id. at 397.[3]

### B.

■ In Hazen Paper, the Supreme Court decided that the standard for willfulness enunciated in Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) "applies to all disparate treatment cases under the ADEA," whether they be based on company policies or on individual or isolated employment decisions. — U.S. at —, 113 S.Ct. at 1710. This standard requires "that the employer either knew or showed reckless disregard for

---

1. Upon receiving notice of the remand, we entered an order granting the parties leave to file briefs, with the discussions "limited to the effect of Hazen Paper Co. on the award of liquidated damages, which constitutes Part E of our earlier opinion." Glover has filed a motion for leave to file a supplemental brief discussing Parts D and F of our prior opinion. That motion is denied.

2. Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

3. Though it has been vacated and therefore lacks precedential value in future cases, the parties and the district court are invited to rely on our prior opinion as it relates to these issues (all but part E) for purposes of resolving matters on remand.

the matter of whether its conduct was prohibited by the statute." *Id.*

█ Having previously applied the *Thurston* standard in this case, *Glover*, 981 F.2d at 395–96, it is a relatively simple matter to do so again. We continue to believe that "[t]here is simply no evidence that McDonnell Douglas recklessly disregarded the possibility of an ADEA violation, and there is no contention that the company knew its actions were discriminatory." *Id.* at 396.[4] Therefore, there was insufficient evidence to sustain the jury's determination that the violation was willful, and liquidated damages should not be awarded.

It is contended that, because Barbeau had been briefed about the basic requirements and prohibitions of the ADEA, and because Barbeau had been found to violate the ADEA, he must have committed his violation recklessly. However, *Thurston* itself rejected this argument when it declined to hold "that a violation of the Act is 'willful' if the employer simply knew of the potential applicability of the ADEA." 469 U.S. at 127, 105 S.Ct. at 625.

█ Our earlier thoughts on this matter were not incorrect simply because our opinion was later described as holding that the "liquidated damages award must be supported by evidence beyond the minimum necessary to prove the violation," *Brown v. Stites Concrete, Inc.*, 994 F.2d 553, 559 (8th Cir.1993) (en banc). It must be remembered that "Congress aimed to create a 'two-tiered liability scheme,' under which some but not all ADEA violations would give rise to liquidated damages." *Hazen Paper*, —— U.S. at ——, 113 S.Ct. at 1708. Therefore, there will necessarily be differences between the evidence in a non-willful case and the evidence in a willful case. A violation of the ADEA does not require any particular mental state, but the award of liquidated damages under the ADEA does. In the case at bar, we did not (and do not) fault Glover for failing to present "direct rather than circumstantial" evidence of discrimination, outrageous conduct by the employer, or proof that

age was a " 'predominant' rather than simply a determinative factor," all of which practices were criticized by *Hazen Paper*, —— U.S. at ——, 113 S.Ct. at 1709. Instead, we hold that though Glover has presented a case from which a jury could find he was terminated based on his age, he has not presented a case from which a jury could find that this action was taken with reckless disregard for Glover's rights under the ADEA.

## III. CONCLUSION

We affirm the jury's finding of age discrimination and the award of backpay. We reverse the jury's finding of willfulness and vacate the corresponding award, as well as the awards for punitive and emotional damages. Finally, we remand to the district court so that it may modify its grant of equitable relief.

---

4. This result was foreshadowed by our earlier discussion of *Hazen Paper*, which had not yet been decided. We stated that "our decision today will be unaffected; if *Thurston* continues to apply, the law—and our decision—will be unchanged." *Glover*, 981 F.2d 396 n. 2.