IT IS FINALLY ORDERED that the Motion for Summary Judgment filed by defendant Ron Hopkins on December 1, 1997, is **DENIED.**

Alisha CUNNINGHAM, et. al, Plaintiffs,

v.

THE KANSAS CITY STAR COMPANY, Defendant.

No. 96–0334–CV–W–4.

United States District Court, W.D. Missouri, Western Division.

Feb. 3, 1998.

Michael E. Waldeck, Niewald, Waldeck & Brown, Kansas City, KS, for Plaintiffs.

Robert L. Driscoll, Teresa L. Clark, Stinson, Mag & Fizzell, P.C., Kansas City, MO,

Diane P. Duvall, Polsinelli, White, Vardeman & Shalton, P.C., Overland Park, KS, David L. Heinemann, Stinson, Mag & Fizzell, P.C., Kansas City, MO, Joseph R. Colantuono, Overland Park, KS, for Defendants.

Sharon A. Willis, Missouri Department of Labor & Industrial Relations, Kansas City, MO, for Division of Employment Security, interested party.

### ORDER

FENNER, District Judge.

Pending before the Court are defendant's Motions for Summary Judgment. Plaintiffs, nine employees of the Kansas City Star (Star), filed this action against The Star pursuant to the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et. seq.* (Title VII); the Civil Rights Act of 1871, 42 U.S.C. §§ 1981 and 1981a; the Missouri Human Rights Act, R.S. Mo. § 213.010 *et seq.* (MHRA) and plaintiffs' common law rights, alleging that during their employment with The Star, they were subjected to unlawful discrimination as a result of their race, color, national origin, ancestry, or sex. Defendant, The Star, filed motions for summary judgment on all of plaintiffs' claims alleging that plaintiffs' claims are barred by the applicable statutes of limitation, and that each plaintiffs' claims of disparate treatment fail as a matter of law. As discussed below, defendant's motion is granted in part and denied in part.

### I. STANDARD OF REVIEW

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Inland Oil and Transport Co. v. United States,* 600 F.2d 725, 727–28 (8th Cir.1979).

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning,* 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter,* 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also City of Mt. Pleasant v. Associated Elec. Coop., Inc.,* 838 F.2d 268, 273 (8th Cir.1988). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 324.

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the *absence* of genuine issues of material fact. *Id.* (emphasis added). The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.*

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence favoring the nonmoving party must be more than "merely colorable." *Id.* at 2511. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted).

Plaintiffs' claims for disparate treatment are analyzed under the framework of *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), wherein plaintiffs' bear the initial burden of establish-

ing a prima facie case, thereby raising an inference of discrimination. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). After plaintiffs establish a prima facie case, the burden of production shifts to defendant, who then must articulate a legitimate, non-discriminatory reason for the adverse employment action. *Burdine,* 450 U.S. at 254. Should the defendant meet its burden of production, the presumption raised by plaintiffs' prima facie case is rebutted and drops from the case. *Id.* at 253. The burden then shifts back to the plaintiffs, who are given the opportunity to show that the employer's stated reasons are merely a pretext for discrimination. *Id.*

Summary judgment should seldom be used in employment discrimination cases and is appropriate only in "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Crawford v. Runyon,* 37 F.3d 1338, 1341(8th Cir.1994)(citing *Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1244 (8th Cir. 1991); *Hillebrand v. M–Tron Industries, Inc.* 827 F.2d 363, 364 (8th Cir.1987), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)).

## II. FACTS

Plaintiffs, Alisha Cunningham (Cunningham), Howard Gray (Gray), Clifford Herring, Jr. (Herring), Reginald Johnson (Johnson), Roderick Lloyd (Lloyd), Clifford McIntosh (McIntosh), Michael Miranda (Miranda), Anthony Thornton (Thornton), and Dwight Thurston (Thurston) are all residents of Missouri and with the exception of Miranda and Lloyd, all are active employees of The Star. Miranda is an inactive employee of The Star and Lloyd is a former employee. With the exception of Cunningham and Miranda, all plaintiffs are black males; Cunningham is a black female and Miranda is a Hispanic male. Plaintiffs' allege that they have been discrim-

inated against by The Star in regard to training, promotions, pay, discipline, retaliation and a hostile work environment based on race. Cunningham additionally alleges that she has been subject to a hostile environment based on gender. Lloyd and Miranda additionally assert that they were constructively discharged from The Star.

## III. DISCUSSION

Before reaching the merits of plaintiffs' discrimination claims, defendant argues that most claims are barred by the applicable statutes of limitation. The applicable statutes of limitation, Section 1981, Title VII and the MHRA will be discussed in turn.

### A. Section 1981

All of the plaintiffs, with the exception of Lloyd, allege that they were discriminated against on the first day of their employment with The Star and that the discrimination has continued to the present date. Lloyd alleges that the first discriminatory act against him occurred in 1982 and continued until he submitted his letter of resignation in 1995. The statute of limitation period in Missouri for a race discrimination claim under 42 U.S.C. § 1981 (Section 1981) is five years. *Drake v. Southwestern Bell Telephone Co.,* 553 F.2d 1185, 1188 (8th Cir.1977). Plaintiffs filed this lawsuit on March 26, 1996.

Defendant argues that plaintiffs' discrimination claims based on Section 1981 are time barred in two ways. First, defendant argues that any claims which arose before March 26, 1991, are absolutely barred by the five year statute of limitations.[1] Second, defendant argues that plaintiffs' claims are governed by the amended version of Section 1981, which became effective on November 21, 1991, and that because the amended version of Section 1981 is not retroactive, any claims which arose prior to November 21, 1991, are barred.[2] It is clear that the amended ver-

---

1. Plaintiffs argue their claims are not barred by the statute of limitations because of the existence of a continuing pattern of discrimination by defendant. The issue of whether the "continuing violation" theory applies to plaintiffs claims is addressed *infra* Sec. B. Title VII and MHRA discussion.

2. Prior to November 21, 1991, Section 1981 stated

 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and prop-

sion of Section 1981 applies to plaintiffs' claims.[3]

Congress amended Section 1981 on November 21, 1991. The amended 1981 states:

(b) For purposes of this section, the term 'Make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.

Defendant argues that the amended version of Section 1981 is not retroactive, therefore, it only applies to conduct that occurred after November 21, 1991. Accordingly, defendant requests that plaintiffs' Section 1981 claims involving pre-November 21, 1991, conduct be barred.

The United States Supreme Court has determined that the 1991 amendment to Section 1981 does not apply retroactively. In *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994), petitioners alleged respondent had discharged them in 1986 because of their race in violation of Section 1981. Petitioners filed suit in 1986, and while their appeal was pending, Congress amended Section 1981. The Court determined that Section 1981 could not be retroactively applied to pending cases of preenactment conduct. Therefore, petitioners complaint of wrongful discharge in 1986 was not governed by the amended version of Section 1981.

Accordingly, in *Williams v. KETV Television, Inc.*, 26 F.3d 1439 (8th Cir.1994), plaintiff requested that the court submit her retaliation claims, which arose out of events that occurred in 1986 and 1988, to the jury under the amended version of Section 1981. The Court rejected plaintiff's request, finding that the 1991 amendment did not apply to cases arising prior to the enactment of the amendment. *See, Jeffries v. Metro–Mark, Inc.*, 45 F.3d 258 (8th Cir.1995), *cert. denied*, 516 U.S. 830, 116 S.Ct. 102, 133 L.Ed.2d 56 (1995)(holding that because Section 1981 is

not retroactive, plaintiff, who was fired the day before Congress amended Section 1981, was barred from bringing racial harassment and discriminatory discharge claims under the amended Section 1981); *Winbush, et al., v. State of Iowa*, 66 F.3d 1471 (8th Cir.1995)(finding that plaintiffs civil rights action could not be brought under the amended Section 1981 because all of the conduct upon which their claims rested occurred before November 21, 1991); *Simons v. Southwest Petro–Chem, Inc.*, 28 F.3d 1029 (1994)(concluding that petitioners claim, which arose and was filed before 1991, was governed by the pre-amended Section 1981 even though Section 1981 was amended while petitioners claim was on appeal).

While these cases clearly bar claims arising out of preenactment conduct, they do not address preenactment conduct that continued through November 21, 1991, the date Section 1981 was amended. In the present case, plaintiffs clearly allege discriminatory conduct that occurred before November 21, 1991, and continue to the present date.

In *Russell v. City of Overland Police Dept.*, 838 F.Supp. 1350 (E.D.Mo.1993), the court addressed a similar issue, wherein plaintiff's claim arose from pre and post amendment conduct. In *Russell*, plaintiff alleged continuous and ongoing acts of sexual harassment and discrimination occurring from the period prior to the enactment of the 1991 amendment into the period subsequent thereto. Therefore, the Court determined that because the alleged conduct did not "only occur prior to the Act's effective date of November 21, 1991, but also occurred thereafter" the plaintiff was entitled to a trial by jury on those claims "whether they occurred prior to the enactment of the Civil Rights Act of 1991 or thereafter." *Russell* at 1354. *See, Boyce v. Dickinson County, Kansas*, 1994 WL 174021 (D.Kan.1994)(rejecting defendant's argument that because the bulk of offensive conduct occurred prior to Novem-

---

erty as is enjoyed by white citizens, and shall be subject to like punishment . . . .

**3.** In 1989, the United States Supreme Court stated that Section 1981 only applied to discrimination in the making and enforcement of contracts and did not apply to discriminatory conduct which occurs after the formation of a contract and which does not interfere with the right to

enforce established contract obligations. *Patterson v. McLean Credit Union* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Plaintiffs in the present case do not allege discrimination in the making and enforcement of their contracts, therefore, pre-amended Section 1981 would not provide them a right to relief.

ber 21, 1991, plaintiff was not entitled to present her claims under Section 1981 as amended, finding instead that because the relevant conduct consisted of ongoing conduct occurring both pre and post Act, plaintiff was entitled to the benefits of Section 1981 as amended).

Clearly plaintiffs do not base their discrimination claims on conduct that occurred solely prior to November 21, 1991. Plaintiffs allege discriminatory events that occurred before November 21, 1991, and continue to the present date. Therefore, because plaintiffs allege continuous and ongoing acts of discrimination occurring from the period prior to the enactment of the 1991 amendment into the present date, they are entitled to bring all such alleged conduct under the amended version of Section 1981. However, plaintiffs' damages are limited to recovery for conduct that occurred after March 26, 1991, as addressed *infra* Section B, Title VII and MHRA claims.

**B. Title VII and MHRA Claims**

Defendant contends that many of plaintiffs' claims are time barred by Title VII and The Missouri Human Rights Act (MHRA). Title VII claims must be filed within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e–5(e)(1); 29 C.F.R. § 1601.13(b)(1). The MHRA requires that a charge of discrimination must be filed with 180 days of the alleged act of discrimination and that any action brought in court under the MHRA must be filed no later than two years after the alleged cause occurred. V.A.M.S. §§ 213.075.1., 213.111.1. The MHRA requires that both statutes of limitations be satisfied. Therefore, because in the present case the two-year bar date is the later of the two bar dates, as required by the facts alleged herein, the two year date is applied to plaintiffs' claims.

■ Where a party alleges a general pattern of discrimination which is not limited to isolated incidents, but "pervades a series or pattern of events" which continue to within the statutory period, the filing is timely regardless of when the first discriminatory incident occurred. *Satz v. ITT Financial Corp.*, 619 F.2d 738, 744 (8th Cir.1980)(citing *Laffey v. Northwest Airlines, Inc.* 567 F.2d 429, 473 (D.C.Cir.1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978)). When an employer is accused of an ongoing practice that began prior to the statute of limitations period plaintiffs' claim may nevertheless be timely under the "continuing violation" doctrine. *Ashley v. Boyle's Famous Corned Beef Co.*, 66 F.3d 164 (8th Cir.1995). Therefore, an employee may challenge ongoing discriminatory acts even if like discriminatory acts could have been challenged earlier and are thus time-barred. The "critical question is whether a present *violation* exists." *Ashley*, 66 F.3d at 167–168 (citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977)(emphasis in original)).

■ Claims that involve a pattern of discrimination with regard to training, opportunities for advancement and job assignments, embody the "continuing violation" theory. *See*, *Satz v. ITT Financial Corp.*, 619 F.2d 738 (8th Cir.1980)( holding that plaintiff satisfactorily alleged a continuing pattern of discrimination in regard to pay, training, opportunity and job assignments). Claims regarding such discriminatory conduct, wherein the discrimination is not limited to isolated events but pervades a series or pattern of events, are timely if filed within the statutory period of the last date of occurrence. *Satz, supra; Ashley*, 66 F.3d at 168.

■ Discrimination in pay is also a pattern of discrimination subject to the "continuing violation" theory. It is well settled that "[e]ach week's paycheck that delivers less to a [minority] than to a similarly situated [nonminority] is a wrong actionable..." *Ashley*, 66 F.3d at 168 (citations omitted). The practice of discrimination in pay occurs not only when the employer establishes pay levels, but as long as the discriminatory differential continues. *Satz*, 619 F.2d at 743 (citing *Corning Glass Works, v. Brennan*, 417 U.S. 188, 205–10, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974)).

■ The "continuing violation" theory is additionally applicable to claims of a hostile environment. *Gipson v. KAS Snacktime*, 83 F.3d 225, 229 (8th Cir.1996). Because evidence of a hostile environment falls under the "continuing violation" exception to a statute of limitations bar, the limitations period runs from the "last occurrence of discrimination." *Varner v. National Super Markets,*

*Inc.* 94 F.3d 1209, 1214 (8th Cir.1996) (citations omitted).

■ However, the "continuing violation" theory does not apply to all types of employment discrimination. Federal courts have concluded that a discrete, adverse employment action, such as a discharge, layoff, or failure to promote action is a "completed act at the time it occurred." *Gipson* at 229 (8th Cir.1996). Thus, the time for filing a lawsuit involving such claims runs from the date of such a discriminatory act, "even if its effects on the injured employee are long-lasting." *Gipson,* 83 F.3d at 229 (citations omitted).

■ Additionally, while certain discrimination claims are *timely* under the "continuing violation" theory, plaintiffs are not entitled to recover for the entire period of alleged discrimination. The Eighth Circuit has specifically addressed this issue, finding that

[when] an employer is accused of an ongoing practice that began prior to the statute of limitations period, the claim may nonetheless be timely under the "continuing violation" doctrine. The employee may challenge ongoing discriminatory acts even if similar illegal acts could have been challenged earlier and are thus time-barred ... *Relief back to the beginning of the limitations period strikes a reasonable balance between permitting redress of an ongoing wrong and imposing liability for conduct long past.*

*Ashley v. Boyle's Famous Corned Beef Co.,* 66 F.3d 164, 167–68 (8th Cir.1995)(emphasis added; citations omitted). *See, Gipson v. KAS Snacktime Co.,* 83 F.3d 225 (8th Cir.1996)(finding that if plaintiff showed a continuing violation amounting to a hostile work environment under the MHRA, he was permitted to recover damages incurred after the beginning of the limitations period); *Knight v. Columbus, Ga.,* 19 F.3d 579 (11th Cir.1994)(permitting recovery in a continuing violations case for any violations for which the statute of limitations has not expired).

In the present case, each plaintiff alleges that The Star's discriminatory acts continue to the present date. Because the Court is obliged to presume plaintiffs' assertions are true, it must be assumed that plaintiffs' alleged discrimination continues to the present date. *See, Bethel v. Jendoco Construction Co.,* 570 F.2d 1168 (3rd Cir.1978). Accordingly, the Court assumes that each plaintiff has alleged the necessary element of a "present violation" as required when applying the "continuing violation" theory. However, as discussed *supra,* not all claims of discrimination are covered by the "continuing violation" theory and relief for the claims that are covered is permitted only back to the beginning of the statute of violations. Applying the aforementioned principles, each plaintiffs' claims will be addressed in turn.

Plaintiffs each allege that they were discriminated against with regard to their job assignments, pay, training, promotions, discipline, and hostile work environments. Additionally, all plaintiffs with exception of Thurston allege that they were retaliated against by The Star. The case law, as discussed *supra,* clearly states that the "continuing violation" theory applies plaintiffs' claims of discrimination regarding job assignments, pay, training, discipline, hostile work environment and retaliation. Again, while these alleged continuous acts of discrimination are *timely,* relief for such acts may only be given back to the beginning of the limitations period.

Accordingly, if plaintiffs prove their claims covered under the "continuing violation" theory, each may recover damages incurred under Section 1981 after March 26, 1991 [4] and under the MHRA after March 26, 1994.[5] Additionally, if plaintiffs prove damages under Title VII, recovery will be permitted for conduct that occurred after the following dates:

Cunningham—October 14, 1993; [6]

Gray—November 25, 1992; [7]

---

**4.** Five years before the lawsuit was filed. 42 U.S.C. § 2000e–5(e)(1).

**5.** Two years before the lawsuit was filed. V.A.M.S. §§ 213.075.1, 213.111.1.

**6.** Plaintiff Cunningham amended her administrative complaint on March 22, 1996, to include a

claim for retaliation. Therefore, any damages under Title VII for retaliation shall be for conduct that occurred 300 days before March 22, 1996.

**7.** Plaintiff Gray amended his administrative complaint on November 16, 1995, to include a claim for retaliation. Therefore, any damages under

Herring—November 24, 1992; [8]
Johnson—December 9, 1992;
Lloyd—November 24, 1992; [9]
McIntosh—December 3, 1992;
Miranda—August 23, 1993;
Thornton—December 2, 1992;
Thurston—November 24, 1992.

Plaintiffs' failure to promote claims are not covered by the "continuing violation" theory and therefore run from the date the alleged act occurred. Accordingly, the following failure to promote claims are time barred:

*Cunningham:*

I. Section 1981—any failure to promote before March 26, 1991 is barred. Therefore, the following claims are barred:

— Promotion Bob Tucker received in or about 1988.
— Promotion or reassignment to the plate room in 1989–1990.
— Promotion of Dierk Rice in late 1990.

II. Title VII -any failure to promote before October 14, 1993 is barred. Therefore, the following claims are barred:

— All claims that are barred under § 1981. Additionally, the Promotion of Chuck Torres is barred, unless it can be proven that the promotion took place after October 14, 1993.

III. MHRA—any failure to promote before March 26, 1994 is barred. Therefore, the following claims are barred:

—All claims that are barred under § 1981 and Title VII.

*Gray:*

I. Section 1981—any failure to promote before March 26, 1991 is barred. Therefore, the following claims are barred.

— Failure to be hired as a press trainee in 1979 or 1980.
— Failure to receive promotion sometime between 1978–1981.

Title VII for retaliation shall be for conduct that occurred 300 days before November 16, 1995.

**8.** Plaintiff Herring amended his administrative complaint on December 15, 1995, to include a claim for retaliation. Therefore, any damages under Title VII for retaliation shall be for conduct that occurred 300 days before December 15, 1995.

— Bill Tate's promotion to man-in-charge in 1988 and assistant press supervisor and press supervisor in 1990.
— James Robinson's promotion to assistant press supervisor in 1990.
— Dale Raynard's promotion to Assistant Press Supervisor in 1990.
— Al Hernandez's placement as Assistant Press Supervisor in 1990.

II. Title VII -any failure to promote before November 25, 1992 is barred. Therefore, the following claims are barred:

— All claims that are barred under Section 1981
— Tony Gunter's promotion to Assistant Press Supervisor in 1992, if it occurred before November 25, 1992.
— Russell Mayden's promotion to Assistant Press Supervisor in 1992, if it occurred before November 25, 1992.

III. MHRA -any failure to promote before March 26, 1994 is barred. Therefore, the following claims are barred:

— All claims that are barred under Section 1981 and Title VII
— Tony Gunter's promotion to Assistant Press Supervisor in 1992.
— Russell Mayden's promotion to Assistant Press Supervisor in 1992.

*Herring:*

I. Section 1981—any failure to promote before March 26, 1991 is barred. Therefore, the following claims are barred:

— The promotions of Russell Mayden, Todd Miller, J.R. Robinson, Tony Gunter, Kevin Mavel, Todd Linscott, David Admire, and Art Ryan that occurred before March 26, 1991.

II. Title VII -any failure to promote before November 24, 1992 is barred. Therefore, the following claims are barred:

**9.** Plaintiff Lloyd amended his administrative complaint on November 16, 1995, to include a claim for retaliation. Therefore, any damages under Title VII for retaliation shall be for conduct that occurred 300 days before November 16, 1995.

— All claims that are barred under Section 1981

— The promotion of Tony Gunter, Todd Miller and Russell Mayden to Assistant Press Supervisor in June of 1992.

III. MHRA -any failure to promote before March 26, 1994 is barred. Therefore, the following claims are barred:

— All claims are barred under MHRA

### Johnson:

I. Section 1981—any failure to promote before March 26, 1991 is barred. Therefore, the following claims are barred.

— The transfer to regular crews given to Scott Slocum, John Hughes, Dave Stegman, Charles McCoy, Michael Baxley, before Johnson was transferred to a regular crew.

II. Title VII -any failure to promote before December 9, 1992 is barred. Therefore, the following claims are barred:

— All claims that are barred under Section 1981

— The promotion of Tony Gunter, Todd Miller and Russell Mayden to Assistant Press Supervisor in June of 1992.

III. MHRA -any failure to promote before March 26, 1994 is barred. Therefore, the following claims are barred:

— All claims are barred under MHRA

### Lloyd:

I. Section 1981—any failure to promote before March 26, 1991 is barred. All of Lloyds' claims are for conduct after March 26, 1991, therefore none of his claims are barred.

II. Title VII -any failure to promote before November 24, 1992 is barred. Therefore the following claims are barred:

— Ron Oaks' promotion to full-time press trainee on April 6, 1992.

— Matt Goodspeed's classification as a press operator in June 1992.

III. MHRA -any failure to promote before March 26, 1994 is barred. Therefore, the following claims are barred:

— All claims are barred under MHRA

### McIntosh:

I. Section 1981—any failure to promote before March 26, 1991 is barred. Therefore, the following claims are barred.

— Promotion of J.R. Robinson to Assistant Press Supervisor on Cliff Huntsucker's crew in April of 1990.

II. Title VII -any failure to promote before December 3, 1992 is barred. Therefore, the following claims are barred:

— All claims that are barred under Section 1981

— The promotion of Tony Gunter, Todd Miller and Russell Mayden to Assistant Press Supervisor in June 15 of 1992.

III. MHRA -any failure to promote before March 26, 1994 is barred. Therefore, the following claims are barred:

— All claims that are barred under Section 1981 and Title VII

### Miranda:

I. Section 1981—any failure to promote before March 26, 1991 is barred. Therefore, the following claims are barred.

— Promotion of Gerald Starkey to Man-in-charge on or around January 1, 1987, then to press supervisor on March 6, 1989.

— Jeff Morris to man-in-charge on or around January 1, 1987.

— Promotion of Tim Slusser to man-in-charge on or around January 1, 1987.

— Promotion of Bill Tate to man-in-charge in 1988, then to Assistant Press Supervisor in January, 1990.

— Promotion of Russell Mayden to folderman/Assistant Press Supervisor in 1988 or 1989.

— Promotion of J.R. Robinson to Assistant Press Supervisor in April of 1990.

II. Title VII -any failure to promote before August 23, 1993 is barred. Therefore, the following claims are barred:

— All claims that are barred under Section 1981

— The promotion of Tony Gunter, Todd Miller and Russell Mayden to Assistant Press Supervisor in June 15 of 1992.

— The promotion of Jeff Morris to Press Supervisor in 1992.

— The promotion of Ken Davison to Assistant Press Supervisor in 1992.

III. MHRA -any failure to promote before March 26, 1994 is barred. Therefore, the following claims are barred:

— All claims that are barred under Section 1981 and Title VII

— The promotion of Tim Slusser to Assistant Press Supervisor on March 7, 1994.

*Thornton:*

I. Section 1981—any failure to promote before March 26, 1991 is barred. Therefore, the following claims are barred.

— Glenn Struchtemeyer transfer to the pressroom maintenance crew on or about July 2, 1990.

II. Title VII -any failure to promote before December 2, 1992 is barred. Therefore, the following claims are barred:

— All claims that are barred under Section 1981

III. MHRA -any failure to promote before March 26, 1994 is barred. Therefore, the following claims are barred:

— All claims that are barred under Section 1981 and Title VII

*Thurston:*

I. Section 1981—any failure to promote before March 26, 1991 is barred. Therefore, the following claims are barred:

— His demotion from Reelroom Supervisor in 1986

— Promotion of Mark Jeffery to Man-in-charge on January 1, 1986.

— Promotion of Russell Mayden to fold-erman/Assistant Press Supervisor in 1989.

— Promotion of J.R. Robinson to Assistant Press Supervisor on April 16, 1990.

— Promotion of Rick Parker to Assistant Press Supervisor on April 16, 1990.

— Promotion of Ivan Braley to Assistant Press Supervisor on April 16, 1990.

II. Title VII -any failure to promote before November 24, 1992 is barred. Therefore, the following claims are barred:

— All claims that are barred under Section 1981.

— Promotion of Tony Gunther to Assistant Press Supervisor on June 15, 1992.

— Promotion of Russell Mayden to Assistant Press Supervisor on June 15, 1992.

— Promotion of Todd Miller to Assistant Press Supervisor on June 15, 1992.

— Promotion of Ivan Braley to Press Supervisor on June 15, 1992.

— Promotion of Ken Davidson to Assistant Press Supervisor in late July, 1992.

III. MHRA -any failure to promote before March 26, 1994 is barred. Therefore, the following claims are barred:

— All claims that are barred under Section 1981 and Title VII.

Having exhausted all of the issues relevant to the applicable statutes of limitation, the Court now turns to plaintiffs' specific claims of discrimination.

*A. Job Assignments.*

Collectively plaintiffs argue that they were continually assigned to floater crews and reel room duties that resulted in the denial of necessary training for plaintiffs to be considered for advancement. Plaintiffs allege their job assignments stigmatized them and contributed to the racially hostile work environment at The Star. Defendant argues that it had legitimate nondiscriminatory reasons for not granting plaintiffs their desired job assignments in that other employees were more qualified for the positions. Additionally, defendant asserts that the job assignments plaintiffs received did not result in adverse employment actions because the assignments did not affect the terms and of conditions of their employment. *Ledergerber v. Stangler,* 122 F.3d 1142 (8th Cir.1997)(finding that a change in working conditions that causes no materially significant disadvantage is insufficient to establish adverse employment action).

Plaintiffs' allegations regarding job assignments must be viewed in the context of their entire complaint. Defendant's legitimate nondiscriminatory reason for not placing plaintiffs in open job assignments is that others were more qualified. However, there is sufficient evidence in the record to find that defendant's proffered reason is pretextual. The record establishes a material issue

of fact as to whether other employees were more qualified for the positions because they had received training that plaintiffs had been discriminatorily denied. Further, it cannot be said that plaintiffs suffered no adverse employment action, such as a reduction in pay or benefits. Viewing the allegations in a light most favorable to plaintiffs, the Court finds that there is a material issue of fact as to whether plaintiffs' job assignments resulted in plaintiffs being denied opportunities for advancement, which would have resulted in greater pay and increased benefits. Accordingly, summary judgment on plaintiffs claims of discriminatory job assignments is denied.[10]

### B. Disparity in pay

 Plaintiffs allege they were discriminated against by the rate of their pay. In order to establish a prima facie case of salary discrimination, plaintiffs must show that they performed substantially equal work to their fellow employees but were paid less for the work than their non-minority peers. *Day v. Bd. of Regents of University of Nebraska*, 911 F.Supp. 1228, 1244–45 (D.Neb. 1995), *aff'd*, 83 F.3d 1040 (8th Cir.1996)(per curiam). Defendant argues that the plaintiffs compared their pay to that of their supervisors, therefore, the comparison should be disregarded because plaintiffs did not perform work equal to that of their supervisors. While defendant's argument in this regard is valid, nonetheless, material issues of fact exist on issues that clearly affect plaintiffs' pay, such as, whether The Star utilized a bona fide merit pay system and whether plaintiffs were paid less than non-minority peers who performed substantially equal work. Because such material issues of fact are in dispute, summary judgment on plaintiffs' disparity in pay claim is denied.

### C. Failure to Train

 Plaintiffs assert that they were discriminated against in that they were not given training necessary for them to advance at The Star. Defendant contends that plaintiffs who were Press Operators were in a position that did not require additional train-

ing. However, because the record reflects that a controversy over whether non-minorities operators received additional training when plaintiffs did not, it has been shown that defendant's proffered reason for not giving plaintiffs additional training may be pretextual. Additional material issues of fact surround plaintiffs' failure to train allegations, such as the contents of non-minority training documents and appraisals compared with plaintiffs' similar documents. It is axiomatic that training affects each pressroom employee's promotional opportunities. There is sufficient evidence in the record to find a material issue of fact regarding whether plaintiffs' were given less training and consequently, whether such training, or the lack thereof, was a factor in their rate of advancement at The Star. Additionally, the record clearly establishes that the process for training in the pressroom was informal and provided by a supervisor upon request. When considering cases of supervisory employees, disparate treatment may be proven where employment decisions are made by supervisors subjectively without definite standards for review and the decisions made by such supervisors result in a pattern disfavoring minority employees. *Satz v. ITT Financial Corp.*, 619 F.2d 738, 740 (8th Cir. 1980). For the aforementioned reasons, summary judgment on plaintiffs' claim of failure to train is denied.

### D. Failure to Promote

 To establish a failure to promote claim on their claims that are not time-barred, each plaintiff must show that he or she is (1) a member of a protected class; (2) qualified and applied for the promotion; (3) was rejected; and (4)another employee who was not a member of a protected group was promoted instead. *Marzec v. Marsh*, 990 F.2d 393, 395–96 (8th Cir.1993). While the Court will address each plaintiffs' claims in turn, it is necessary to first address the defendant's argument that many plaintiffs were not promoted because they lacked the necessary qualifications for the promotion.

---

**10.** Defendant argues that plaintiff McIntosh's third job transfer claim fails because McIntosh was denied the transfer to the machine shop when he failed the test to become qualified as a machinist. There is a material issue of fact over whether the test McInosh was given had been utilized for all applicants.

As discussed, *supra*, viewing the evidence in a light most favorable to plaintiffs, there are material issues of fact in the record regarding whether plaintiffs' were discriminatorily denied the training and opportunities necessary to qualify for promotions. Therefore, defendant's argument that plaintiffs' failure to qualify for promotions is insufficient to grant summary judgment.

*Cunningham:*

Cunningham's only failure to promote claim that may not be barred by the applicable statutes of limitation is the promotion received by Chuck Torres' if it can be shown that the promotion took place after October 14, 1993. Defendant argues Cunningham was not qualified for the promotion. As discussed above, such argument is rejected and summary judgment on Cunningham's claim is denied.

*Gray:*

Gray's remaining claims relate to: (1) Russell Mayden's promotion in June, 1992; (2) Tony Gunters' promotion in June, 1992; (3) Phil Palmer's transfer to Tom Self's crew in 1995; (4) J.R. Robinson's promotion to Press Supervisor in 1995; (5) Matt Goodspeed's promotion in 1995; and (6) Chuck Silver's promotion in 1997.

■ Gray did not apply for Robinson's 1995 promotion because it was for a night crew shift. Because Gray did not apply for the promotion, he cannot establish a prima facie case for discrimination regarding this promotion and summary judgment is granted as to this claim. Regarding Goodspeed's promotion, Gray did not apply because he "did not want to work on [this] crew due to the constant degrading, discriminatory treatment he endured from [this crew manager] over the previous seven years." While Gray's perception of discrimination in this regard is relevant to the existence of a hostile work environment, his failure to apply for such promotion again prevents him from making a prima facie case. Therefore, summary judgment is granted as to Gray's failure to promote claim involving Goodspeed's 1995 promotion.

■ Summary judgment is denied as to the promotions of Palmer as there is evidence that the new position would have provided Gray with substantial increase in the qualifications necessary to receive subsequent promotions. Additionally, summary judgment is denied regarding the promotions of Mayden, Gunter and Silvers. Defendant argues Gray was not qualified for these promotions and that the promotions were given to employees with better evaluations than Gray. A material issue of fact exists as to whether Gray was discriminatorily denied the opportunity to "tryout" for such promotions and whether Gray's evaluations were lower than the other applicants because he was discriminatorily denied training.

*Herring:*

Herrings' promotion claims that remain involve the promotions of Tony Gunter, Russell Mayden, and Todd Miller in June 1992 to Assistant Press Supervisor and the promotion of J.R. Robinson to Press Supervisor in 1995. Defendant argues Herring was not qualified for such promotions. As discussed above, this argument is insufficient to withstand summary judgment. Accordingly, summary judgment on these claims is denied.

*Johnson:*

Johnson alleges he was discriminated against in not receiving promotions granted to Gunter, Mayden, Miller and Braley in 1992 and 1996. Defendant argues Johnson was not qualified for such promotions. As previously discussed, this argument is insufficient for the Court to grant summary judgment on such claims. Accordingly, summary judgment on Johnson's failure to promote for Gunter, Mayden, Miller and Braley's promotions is denied.

*Lloyd:*

Lloyd claims that he was discriminated against by the promotion of William Hathaway and Kevin Stein to full-time press trainees before he became a full-time press trainee. The record does not support such allegations, therefore the timing of the promotions is irrelevant as these claims are without merit. Lloyd claims that the classification of Goodspeed as Press Operator when Goodspeed was hired was discriminatory. While the facts may show that classifying Goodspeed as such was indeed discriminatory, this issue is relevant

to a hostile work environment and does not establish a prima facie case for failure to promote. Thus, summary judgment is granted as to Lloyd's failure to promote claim regarding Goodspeed's classification as a Press Operator.

With respect to Ron Oakes promotion on April 6, 1992, defendant argues Lloyd was not given the promotion because of his discipline record in the pressroom and because Oakes was more qualified. Such arguments, as previously discussed, are insufficient and summary judgment on this claim is accordingly denied.

*McIntosh:*

Regarding McIntosh's remaining failure to promote claims, defendant argues that he was not fully qualified for any of the Assistant Supervisor positions he applied for and did not receive. As stated above, a material issue of fact remains as to whether The Star's conduct in relation to McIntosh's training was discriminatory, thereby preventing him from being qualified for promotions. Summary judgment is therefore denied on McIntosh's failure to promote claims that are not time barred.

*Miranda:*

■ Regarding the promotions of Gunter, Mayden, and Miller in 1992, the record reflects that Miranda was promoted at the same time and to the same position. Therefore, Miranda cannot show that he was rejected for promotion to Assistant Press Supervisor and summary judgment is granted on these claims. Regarding the promotion received by Jeff Morris, Miranda cannot make a prima facie case for failure to promote. Morris is an African–American, therefore, Miranda fails to establish the fourth requirement of failure to promote, which is that an employee who is not a member of a protected group receives the promotion instead of plaintiff. Accordingly, summary judgment on Miranda's claim regarding Morris' promotion is granted.

Defendant contends that the promotion of Ken Davidson was not discriminatory because Davidson was more qualified than Miranda. As fully discussed, *supra*, this argument does not permit the grant of summary judgment. Therefore, summary judgment on Miranda's claim regarding Davidson is denied.

Miranda did not apply for the promotions received by Slusser in 1994, Goodspeed in 1995 and Robinson in 1995. Miranda argues he did not apply for such positions because he was unaware of Slusser's and on disability when Goodspeed and Robinson were promoted. Miranda asserts that his disability was a direct result of The Star's discriminatory conduct. While this evidence may be relevant to other claims made by Miranda, it does not establish a prima facie case for failure to promote. Applying for the position is a necessary element of a prima facie case for failure to promote and Miranda's failure to apply in these instances prevents him from establishing a claim. Accordingly, summary judgment is granted on Miranda's failure to promote claims with respect to Slusser, Goodspeed and Robinson.

*Thornton:*

■ Thornton's discrimination claims that remain are the promotion of Goodspeed to Assistant Press Supervisor in 1995, Thornton's failure to advance from Press Trainee to Press Operator before 1997, the promotion of Chuck Silvers to Assistant Press Supervisor in June 1997. As to each claim, the defendant argues that those employees promoted were more qualified than Thornton. Further, defendant argues that Thornton was not promoted to Press Operator before 1997 because of his work record. However, the record reflects that a material issue of fact exists as to whether Thornton's work record, which contains disciplinary write-ups, was discriminatory. Accordingly, for the reasons discussed above, these arguments cannot result in summary judgment and summary judgment on these claims is denied.

*Thurston:*

Summary judgment is granted with respect to the promotion by James Dillard as Thurston and Dillard held the same position at The Star. Further, summary judgment is granted as to any promotions to Assistant Press Supervisor to which Thurston did not apply. With respect to Thurston's remaining claims for failure to promote, defendant's motion for summary judgment is denied, as it

is based on the assertion that Thurston was not qualified.

## E. Discipline

Plaintiffs' claim that they have suffered discriminatory discipline. To this end defendant argues that the discipline to plaintiffs was not an adverse employment action. In *Montandon v. Farmland Industries, Inc.,* 116 F.3d 355 (8th Cir.1997), the court found that "not everything that makes an employee unhappy is an actionable adverse action." *Montandon,* 116 F.3d at 359. An action must have had some adverse impact on plaintiffs to constitute an adverse employment action. *Id.* There is sufficient evidence in the record to support the finding that disciplinary "write-ups" adversely affected plaintiffs' working conditions in that write-ups affected plaintiffs' opportunities for promotions.[11] Further, a result of the allegedly discriminatory discipline was that certain plaintiffs were placed on probation and denied raises. Clearly the denial of a promotion or raise had an adverse impact on plaintiffs. Accordingly, summary judgment on plaintiffs' claim for discriminatory discipline is denied.

## F. Discharge

Two of the nine plaintiffs, Michael Miranda and Roderick Lloyd have filed constructive discharge claims against The Star. Miranda has been on long-term disability since December 1994, and currently remains on such leave from The Star. The Court finds that Miranda's claim of constructive discharge is not ripe for judicial review.

The doctrine of ripeness is used by the court to determine whether a dispute has yet matured to a point that warrants judicial review. *Automotive, Petroleum & Allied Industries Employees Union, Local 618 v. Gelco Corp.,* 758 F.2d 1272, 1275 (8th Cir.1985). Ripeness is a question of timing, and its rationale is to prevent the courts, through premature adjudication, from engaging in the consideration of abstract disagreements. *Thomas v. Union Carbide Agricultural Products Co., et al.,* 473 U.S. 568, 580, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) (citations omitted). It is well settled that federal courts do not have the power to give advisory opinions or to engage in hypothetical, contingent questions. *Alabama State Federation of Labor v. McAdory,* 325 U.S. 450, 461, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945).

Miranda is currently an employee of The Star, therefore, his claim of constructive discharge has not yet matured to a point that warrants judicial review. The Court is not permitted to engage in a premature adjudication of Miranda's employment possibilities with The Star. Because Miranda's claim of constructive discharge rests on a probability that Miranda may, in the future, not return to The Star, his claim is not ripe for review. Accordingly, summary judgment is granted as to Miranda's claim of constructive discharge.

Plaintiff Lloyd left the Star on May 30, 1995. Lloyd contends that he was constructively discharged, or that he "constructively discharged himself" at that time. Lloyd announced his resignation with a letter that stated

To Whom It May Concern,

I Roderick Lloyd, do hereby formally/informally announce and submit my resignation to the Kansas City Star Co.

My expressed wish is merely that The Kansas City Star continues to strive to operate in the progressive mode that the aforementioned company has espoused in recent months.

Although I do not consider myself in any way a technical analyst in the arena of social harmony, nevertheless I am of the conviction that any company which operates in a civilized society and utilizes **all** of its obtainable resources in general and in particular its employee resources ... such a company will experience dynamic **flying colors.**

In conclusion I Roderick Lloyd wishes The Kansas City Star great success in all of its future endeavors that are created with positive progression in mind for all.

(emphasis in original).

When Lloyd informed David Bibb, the pressroom manager, that he wanted to resign, Bibb asked him if there was anything that could be done to make him stay, to

---

11. Indeed, defendant argued that a legitimate nondiscriminatory reason for not promoting certain plaintiffs was because of the negative reports in their employment records.

which Lloyd responded, "No." Further, Lloyd informed Bibb that he did not want to make printing his life's work and that he wanted to go into some kind of service field.

The Eighth Circuit has articulated the standard for constructive discharge. To constitute constructive discharge, the employer must "deliberately create intolerable working conditions with the intention of forcing the employee to quit and the employee must quit." The plaintiff can satisfy the "intent" requirement by demonstrating that he quit as a reasonable foreseeable consequence of the employer's discriminatory actions. *Summit v. S–B Power Tool, (Skil Corp.), a Div. of Emerson Elec. Co.*, 121 F.3d 416, 421 (8th Cir.1997)(citing *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir.1996)). Additionally, a constructive discharge arises only when a reasonable person would find the conditions of employment intolerable. *Summit*, 121 F.3d at 421 (8th Cir.1997); *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir.1981).

Reviewing the evidence in the light most favorable to Lloyd, the Court finds that there is no indication that The Star acted with the intention of forcing Lloyd to quit. Bibb asked Lloyd if there was anything that could be done to make Lloyd stay and Lloyd responded by telling Bibb, "No." That Bibb requested Lloyd's input regarding whether anything could be done to make Lloyd remain in his position indicates that Bibb did not intend to force Lloyd to quit. Further, an employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged. *Summit*, 121 F.3d at 421. Because Lloyd's evidence does not establish that The Star acted with the intention of forcing him to quit he cannot show that a material issue of fact exists on the issue of constructive discharge.

Lloyd argues that in his discrimination claim he identified the discriminatory discipline, retaliation and harassment that he endured at The Star following the filing of his charge and that this treatment constituted a constructive discharge. While there is evidence that Lloyd may have been discrimi-

nated against on the basis of his race, Lloyds' letter to the Star does not evidence an employee who finds an intolerable atmosphere such that his letter supports his claim of constructive discharge. Lloyd argues that his letter of resignation exemplifies his frustration with the Star's unwillingness to address the situation and encourages the Star to so act. The Eighth Circuit has found that "frustration and embarrassment ... do not make work conditions sufficiently intolerable to constitute constructive discharge." *West v. Marion Merrell Dow, Inc.*, 54 F.3d 493, 498 (8th Cir.1995)(holding that frustration and embarrassment at not being promoted did not constitute constructive discharge). There is insufficient evidence in the record to find that Lloyd left The Star because of intolerable conditions. To the contrary, he informed Bibb that he did not want to make printing his life work and that he desired to go into some kind of service field.

Lloyd alleges that he was not paid the same for the same work and the same hours. The record reveals that Lloyd had not received any pay cut in 1995 and that his pay increased by 29.6% over his last two years of his employment the Star. Again, while Lloyd's claim may evidence discrimination, when coupled with his increase in pay over the last two years it does not amount to constructive discharge. Accordingly, for the foregoing reasons, summary judgment is granted as to Lloyd's claim of constructive discharge.

## G. Cunningham's claims of sexual harassment

Plaintiff Cunningham alleges that she was subjected to overt sexual harassment by employees of The Star which began in 1988 and continues to the present date. Cunningham alleges, *inter alia*, that she was subjected to vulgar comments, cartoons, drawings and carvings, peeked at through holes in the women's bathroom wall, pinched, grabbed and petted by a male co-worker, subjected to offensive gestures and struck in the back with rolled up cardboard by a male co-worker. The alleged comments began in 1988 and continued until approximately August 22, 1996.[12] Defendant argues that a majority of

12. Cunningham alleges sexual harassing conduct

that occurred in 1996, however, at her deposition

incidents that Cunningham alleges were harassment may not be admitted into evidence because they are barred by the applicable statutes of limitation bar dates, namely, March 26, 1991,[13] October 14, 1993,[14] and March 26, 1994.[15] The Court disagrees.

Evidence of incidents occurring outside the limitations period may still be admissible when the incidents are part of a "continuing violation." *Kimzey v. Wal–Mart Stores, Inc.,* 107 F.3d 568, 572 (8th Cir.1997). Evidence of a hostile environment can establish such a "continuous violation." *Kimzey,* 107 F.3d at 573. The critical question in the "continuing violation" analysis is to establish that *any* violation exists during the statutory period. *Jenson v. Eveleth Taconite Co.,* 130 F.3d 1287, 1303 (8th Cir.1997)(citing *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1997)(emphasis in original)). Because Cunningham alleges various incidents that occurred within each of the applicable statutory periods, the Court applies the "continuing violation" theory to Cunningham's claims. However, as previously discussed, while the evidence concerning conduct that occurred outside that applicable statutory period may be admissible, recovery is permitted only back to the beginning of the limitations period. *See, supra,* Sec.B, Title VII and MHRA claims.

■ To establish a prima facie case for sexual harassment, Cunningham must show that: (1) she is a member of a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment, and (5) the employer knew or should have known of the harassment and failed to take appropriate remedial action. *Crist v. Focus Homes, Inc.,* 122 F.3d 1107, 1110 (8th Cir. 1997). Cunningham, as a female, belongs to protected group and thereby meets the first element and because the defendant does not contest Cunningham's ability to satisfy the second element, she also meets the second element.[16]

Defendant argues that Cunningham cannot make a prima facie case for sexual harassment because she cannot raise an inference that the offensive conduct was based on her sex or that the harassment affected a term, condition, or privilege of employment.

Viewing the facts in a light most favorable to Cunningham, there are sufficient facts in the record to establish that the offensive conduct was based on her sex. In *Kimzey v. Wal–Mart,* 107 F.3d 568 (8th Cir.1997), the court found that the plaintiff had shown the harassment she received was based on her sex by showing that the men at her place of employment treated women differently than men and made comments relating to plaintiff's female anatomy. The same allegations have been made in the present case, as well as allegations that a male co-worker stated he was "going to have" Cunningham and that male co-workers viewed her in a state of undress in the locker room.

■ To be actionable, sexual harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Hathaway v. Runyon,* 132 F.3d 1214 (8th Cir.1997)(citing *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). A victim of harassment must have a "subjective belief" that she is working in a hostile environment in order that the harassment actually alter the conditions of the victim's employment. *Kimzey* at 573 (citing *Harris,* 510 U.S. at 21–22 (1993)). Further, while federal law does not create a cause of action for all unpleasant or abusive behavior in the workplace, a workplace permeated with "discriminatory intimidation, ridicule, and insult" is sufficient to establish a hostile environment claim under federal law. *Harris,* 510 U.S. at 21–22. When viewed in the light most favorable to Cunningham, the evidence in the record, to-

on August 22, 1996, Cunningham admitted that she was not currently being sexually harassed at The Star.

**13.** Section 1981

**14.** Title VII

**15.** MHRA

**16.** Defendant's Corrected Suggestions in Support of Defendant's motion for Summary Judgment on the claims Asserted by Plaintiff Alisha Cunningham, p. 24 n. 14.

gether with all reasonable inferences from it, is sufficient to satisfy the third and fourth elements of the prima facie case for sexual harassment.

Defendant further contends that because Cunningham failed to tell The Star about many of the alleged incidents, she fails to establish the fifth element of the prima facie case. The United States Supreme Court rejected a similar argument in *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 72, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). In *Meritor,* the defendant argued that the mere existence of grievance procedure and a policy against discrimination, coupled with plaintiff's failure to invoke the procedure, insulted defendant from liability. The court found that while those facts are relevant to the case, they were not dispositive. The facts of the present case lead the to the same conclusion. While Cunningham's failure to report many of the allegedly harassing incidents to The Star is relevant, it is not dispositive and summary judgment on her claim of sexual harassment is therefore denied.

### H. Hostile Work Environment

Defendant contends that plaintiffs did not exhaust the necessary administrative remedies with respect to their hostile work environment claims because they did not raise this claim in their charge of discrimination filed with Kansas City Human Relations Department (KCHRD). To be properly exhausted, a hostile work environment claim must be separately raised in the administrative charge. Because such a claim is not reasonable related to a claim of discrete acts of discrimination, such as many of plaintiffs in the present case. *See, Tart v. Hill Behan Lumber Co.,* 31 F.3d 668, 671 (8th Cir.1994). However, plaintiffs' charges of discrimination must be read liberally. *Gipson v. KAS Snacktime Co.,* 83 F.3d 225, 229 (8th Cir. 1996) (citations omitted). In the present case plaintiffs clearly alleged a continuing pattern of harassment by The Star adequate to state a claim for hostile work environment. *See, Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Summary judgment on plaintiffs' claims of hostile work environment is therefore denied.

### I. Retaliation

Plaintiff Thurston admits he has no claim against The Star for retaliation, accordingly, summary judgment is granted with respect to Thurston's allegations of retaliation. To establish a prima facie case of retaliation, plaintiffs must show they were (1) engaged in a protected activity; (2) an adverse employment action was taken against them; (3) a causal relationship exists between the two. *Montandon v. Farmland Indus. Inc.,* 116 F.3d 355, 359 (8th Cir.1997). Plaintiffs engaged in a protected activity by filing their administrative charges with KCHRD. The record reveals that plaintiffs' were written-up and disciplined subsequent to their filings with the KCHRD. These actions are enough to establish retaliatory actions for summary judgment purposes. *See, Davis v. Kansas City Housing Authority,* 822 F.Supp. 609, 615 (W.D.Mo.1993)(holding that plaintiff showed defendant's conduct affected a term or condition of her employment by showing a working environment that was dominated by racial hostility and harassment).

### J. Emotional Distress

Plaintiffs claim damages for emotional distress under the Missouri Human Rights Act, Mo.Rev.Stat. §§ 213.010., *et. seq.* (MHRA). Violation of the MHRA permits the court to grant as relief actual and punitive damages, court costs and attorney fees. Mo.Rev.Stat. §§ 213.111.2. Actual damages have been interpreted to include damages for emotional distress. *Glover v. McDonnell Douglas Corp.,* 981 F.2d 388, 395 (8th Cir.1992), *vacated on other grounds, Glover v. McDonnell Douglas Corp.,* 510 U.S. 802, 114 S.Ct. 42, 126 L.Ed.2d 13 (1993).

Missouri courts allow recovery for emotional distress if "the emotional distress or mental injury [is] medically diagnosable and . . . of sufficient severity so as to be medically significant." *Glover,* 981 F.2d at 395 (citations omitted). Expert medical testimony is required to support a claim of emotional distress whenever physical injuries are not incurred. *Id.* In *Glover v. McDonnell Douglas,* Glover, a terminated employee, sued his former employer under the Age

Discrimination in Employment Act (ADEA). The jury awarded Glover $100,000 for emotional distress. The Eighth Circuit vacated the award because Glover failed to present expert medical testimony to support his claim of emotional distress. The Court found that because Missouri courts require expert medical testimony to support an emotional distress claim, Glover's failure to present such testimony was fatal to his recovery for emotional distress.

In the present case, none of the plaintiffs have offered medical expert testimony of emotional distress nor have they designated a medical expert witness to establish that plaintiffs suffered from emotional distress. The failure to offer medical testimony of emotional distress coupled with the failure to designate a medical expert witness barred the plaintiff from recovery in *Grasle v. Jenny Craig Weight Loss Centres*, 167 F.R.D. 406 (E.D.Mo.1996). In *Grasle*, plaintiff, a discharged employee, sued her former employer alleging the employer violated the Missouri Service Letter Statute. The plaintiff alleged she suffered emotional distress and mental anguish as a result of the failure of her former employer to provide her with a service letter. The Court found that under Missouri law a plaintiff is not entitled to damages for emotional distress in the absence of expert medical testimony offered to support such a claim. *Grasle*, 167 F.R.D. at 415–416 (citing *Glover v. McDonnell Douglas Corp.*, 12 F.3d 845 (8th Cir.1994)). Further, because plaintiff had failed to designate and make available for deposition an expert to establish that she suffered from emotional distress, she was not permitted to pursue her claim for emotional distress. *Id.* at 416.

■ Expert medical testimony is required to establish a claim for emotional distress when physical injuries are not sustained regardless of "whether emotional distress constitutes a substantive element of the cause of action or an element of damages for any other type of action" *Heller v. Heritage Environmental Services, Inc.*, 835 F.Supp. 1124, 1126 (E.D.Mo.1993) (citations omitted). In *Heller*, the Court dismissed plaintiffs claim for emotional distress damages under MHRA. The Court found that plaintiff's claim for emotional distress under the MHRA failed to withstand summary judgment because she failed to present expert medical testimony to support her claim and because she admitted that she did not seek medical treatment. In the case at bar, five of the nine plaintiffs have admitted that they did not seek medical treatment for their alleged emotional distress.[17]

■ Clearly the Eighth Circuit requires expert medical testimony to support recovery for emotional distress damages and has determined that failure to present such testimony is fatal to recovery for emotional distress. *Glover, supra; Grasle, supra; Heller, supra.* Additionally, it is clear that expert testimony is required to establish emotional distress in claims arising from either common law or statutory law. *See, Heller v. Heritage Environmental Services, Inc.* 835 F.Supp. 1124 (E.D.Mo.1993)(holding that plaintiff's MHRA claim was barred because she did not produce a medical expert to substantiate her claim of emotional distress and because she admitted to not seeking medical treatment); *See also Glover v. McDonnell Douglas*, 981 F.2d 388 (8th Cir. 1992) *vacated on other grounds*, 510 U.S. 802, 114 S.Ct. 42, 126 L.Ed.2d 13 (1993)(requiring expert testimony to establish medically diagnosable emotional distress in an ADEA claim). Therefore, because plaintiffs' failed to offer expert medical testimony in support of their claim for emotional distress and failed to designate and make available for deposition an expert to establish they suffered from emotional distress, they are barred from pursuing their claims for emotional distress. Accordingly, summary judgment is granted on all of plaintiffs' claims of emotional distress.

## IV. CONCLUSION

After a thorough review of the record in this matter and based on the discussion above, it is hereby

17. Plaintiffs Gray, Thornton, Cunningham, Herring and Thurston admitted that they never sought any medical or other health care treatment for any of the emotional pain and suffering or mental anguish they contend they suffered in connection with their employment at The Star.

**ORDERED** that partial summary judgment has been GRANTED as to the following claims:

**FAILURE TO PROMOTE:**

All of plaintiffs' failure to promote claims that the Court determined were time barred.

GRAY-

(1) Summary judgment as to Gray's failure to promote claim involving Goodspeed's 1995 promotion is GRANTED.

(2) Summary judgment as to Gray's failure to promote claims involving Robinson's 1995 promotion is GRANTED.

LLOYD -

(1) Summary judgment as to Lloyd's failure to promote claim regarding the promotions of Hathaway and Kevin Stein is GRANTED.

(2) Summary judgment as to Lloyd's failure to promote claim regarding Goodspeed is GRANTED.

MIRANDA -

(1) Summary judgment as to Miranda's failure to promote claims regarding the promotions of Gunter, Mayden and Miller in 1992 is GRANTED.

(2) Summary judgment as to Miranda's failure to promote claim regarding Morris' promotion is GRANTED.

(3) Summary judgment as to Miranda's failure to promote claim regarding Slusser, Goodspeed and Robinson is GRANTED.

THURSTON-

(1) Summary judgment as to Thurston's failure to promote claim regarding James Dillard is GRANTED.

(2) Summary judgment is GRANTED as to any promotions to Asst. Press Supervisor to which Thurston did not apply.

---

**DISCHARGE:**

MIRANDA—Summary judgment is GRANTED as to Miranda's claim of constructive discharge.

LLOYD—Summary judgment is GRANTED as to Lloyd's claim of constructive discharge.

**RETALIATION:**

THURSTON—Summary judgment is GRANTED with respect to Thurston's allegations of retaliation.

**EMOTIONAL DISTRESS:**

Summary judgment on all of plaintiffs' claims of emotional distress is GRANTED.

It is further **ORDERED** that summary judgment is DENIED as to the following claims:

**JOB ASSIGNMENTS:**

Summary judgment on plaintiffs' claims of discriminatory job assignments is DENIED.

**DISPARITY IN PAY:**

Summary judgment on plaintiffs' claims of disparity in pay is DENIED.

**FAILURE TO TRAIN:**

Summary judgment on plaintiffs' claims of failure to train is DENIED.

**FAILURE TO PROMOTE:**

CUNNINGHAM—Summary judgment regarding the promotion of Chuck Torres is DENIED.

GRAY - Summary judgment as to Gray's failure to promote claim involving Palmer, Mayden, Gunter and Silvers is DENIED.

HERRING - Summary judgment regarding promotion claims involving Tony Gunter, Russell Mayden and Todd Miller in June 1992 and promotion of J.R. Robinson in 1995 is DENIED.

JOHNSON - Summary judgment regarding promotion of Gunter, Mayden, Miller and Braley is DENIED.

LLOYD - Summary judgment as to Lloyd's failure to promote claim regarding Ron Oakes is DENIED.

McINTOSH - Summary judgment as to McIntosh's failure to promote claims that are not time barred is DENIED.

MIRANDA - Summary judgment as to Miranda's failure to promote claim regarding Davidson is DENIED.

THORNTON - Summary judgment as to Thornton's failure to promote claim is DENIED.

THURSTON - Summary judgment is DENIED regarding remaining claims for failure to promote.

---

### DISCIPLINE:

Summary judgment on plaintiffs' claim for discriminatory discipline is DENIED.

### SEXUAL HARASSMENT:

Summary judgment on plaintiff Alisha Cunningham's claim of sexual harassment is DENIED.

### HOSTILE WORK ENVIRONMENT:

Summary judgment on plaintiffs' claims of hostile work environment is DENIED.

### RETALIATION:

Summary judgment on all plaintiffs' claim of retaliation, with the exception of plaintiff Thurston is DENIED.

IT IS SO ORDERED.